DETROIT GREYHOUND EMPLOYEES FEDERAL CREDIT
UNION *v.* AETNA LIFE INSURANCE COMPANY.

1. INSURANCE—GROUP POLICY—CONFLICT OF LAWS.
   Generally a policy of group insurance is governed, as between
   employer and insurer, by the law of the place of issuance
   and delivery of the policy, where the policy expressly pro-
   vides that it is to be governed by such law.

2. SAME—GROUP INSURANCE—CONFLICT OF LAWS.
   Group annuity policy *held,* governed by Illinois law where
   the master contract creating the rights thereunder was signed
   in Connecticut, delivered in Illinois, performed throughout
   the United States, and the policy provided that Illinois law
   should apply, since the purpose of the parties was to es-
   tablish uniformity of interpretation, it being intended that
   Illinois law govern the contractual relationship.

3. CONTRACTS—ASSIGNABILITY OF BENEFITS—RESTRICTIONS.
   Courts have striven to uphold freedom of assignability of con-
   tracts, but also recognize the concept of freedom to contract,
   and where appropriate language is used, assignments of money
   due under contracts may be prohibited.

4. SAME—LIMITATION OF ASSIGNMENT.
   Parties to a contract may limit the freedom of alienation of
   rights and prohibit assignment where clear language is used,
   and the plainest words have been chosen.

5. SAME—RESTRICTIONS ON ASSIGNMENT—PUBLIC POLICY.
   It is not contrary to public policy to allow parties to a contract
   to limit the alienation of rights and prohibit the assignment

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur, Insurance § 19 *et seq.*
[3–5, 8] 6 Am Jur 2d, Assignments § 22; 17 Am Jur 2d, Contracts
   § 180.
[6, 11, 12] 29A Am Jur, Insurance § 1764.
[7] 16 Am Jur 2d, Conflict of Laws § 36 *et seq.*
[9, 10] 17 Am Jur 2d, Contracts § 465 *et seq.*

of benefits thereunder, and there is no sound reason why an assignee should remain unaffected by a provision in the very contract which gave life to the claim he asserts.

6. INSURANCE—GROUP POLICIES—RESTRICTIONS ON ASSIGNMENT—IL-LINOIS LAW.

Prohibition of the assignment of insurance benefits is valid and enforceable under Illinois law, although such prohibition is effective only before a loss occurs.

7. CONTRACTS—FOREIGN CONTRACTS—ENFORCEMENT OF FOREIGN CON-TRACT.

The substantive provisions of a contract, valid by the law of the State where the contract is made and to be performed, create a right of property enforceable in another jurisdiction providing it is not contrary to the public policy of the forum.

8. SAME—PROHIBITION AGAINST ASSIGNMENT.

The enforcement of the provision of a contract made in another State, prohibiting the assignment of benefits, is not contrary to the public policy of this State.

9. SAME—PERFORMANCE—REVOCATION OF WAIVER.

Parties to a contract who mutually adopt a mode of performing that contract differing from its strict terms, or mutually relax its terms by adopting a loose mode of executing it, cannot go back upon the past and insist upon a breach because the contract was not fulfilled according to its letter, but either party may insist upon a different mode of observing it in the future and require a return to the terms of the contract.

10. SAME—WAIVER—NOTICE OF REVOCATION.

A mere waiver of contract provisions, not supported by consideration, is revocable any time as long as reasonable notice is given to the other party that the contract provisions must be observed in the future, since such notice eliminates any claim of reliance by such other party upon the waiver.

11. INSURANCE—GROUP POLICY—FOREIGN CONTRACT—PROHIBITION AGAINST ASSIGNMENT—WAIVER—NOTICE OF REVOCATION.

Finding that plaintiff-assignee of certain group annuity benefits was precluded from claiming any right thereto because of a restriction on assignment contained in a group insurance policy *held*, proper, where, at plaintiff's request, defendants had agreed to recognize certain assignments to plaintiff, but had notified plaintiff, prior to presentation of the claim in question, that no assignments would be recognized after a given date, whether taken before or after that date, since a mere waiver not supported by consideration is revocable any time as long as rea-

sonable notice is given to the other party, thereby eliminating any claim of reliance on the waiver by the other party.

12. SAME—RESTRICTION ON ASSIGNMENT—GROUP POLICY—ENFORCEMENT OF FOREIGN CONTRACT.

 Decision of trial court that plaintiff-assignee had no right to the proceeds of a certain group annuity policy because of a prohibition against assignment contained in the group policy even though defendant had previously agreed to recognize certain assignments *held,* proper, where the policy was delivered in Illinois, specifically provided that Illinois law should govern to obtain uniformity of interpretation of contract, such prohibitions are recognized in Illinois and do not offend the public policy of this State, and defendants' prior waiver of the prohibition had been terminated by reasonable notice to plaintiff that such assignments would not be recognized after a date prior to the assignment.

Appeal from Wayne; Burdick (Benjamin D.), J. Submitted Division 1 April 6, 1967, at Detroit. (Docket No. 1,661.) Decided July 20, 1967. Rehearing denied August 25, 1967. Leave to appeal granted October 26, 1967. See 379 Mich 786.

Detroit Greyhound Employees Federal Credit Union, a Federal corporation, filed its complaint in the Common Pleas Court of Detroit against Aetna Life Insurance Company, Connecticut General Life Insurance Company, and the Greyhound Corporation, for sums allegedly due plaintiff as a result of an assignment by an employee of the Greyhound Corporation of all moneys payable to him under an annuity contract issued by defendant insurance companies pursuant to a master agreement with defendant Greyhound Corporation. Judgment for plaintiff. Defendants appealed to the circuit court. Reversed. Judgment for defendants. Plaintiff appeals. Affirmed.

*Langs, Molyneaux & Armstrong,* for plaintiff.

*Miller, Canfield, Paddock & Stone (John W. Gelder,* of counsel), for defendants.

FITZGERALD, J.   Detroit Greyhound Employees Federal Credit Union, plaintiff, appeals from a reversal by circuit court of a judgment entered in its behalf by the common pleas court of Detroit.

Plaintiff based its suit on an assignment, for security purposes, from an employee of Greyhound Corporation of the moneys payable to him under an annuity contract upon termination of his employment.   Defendants claim this assignment is prohibited by the provisions of the group annuity contract. To set forth the positions of the parties, we adopt the following statement of facts from the trial court's opinion, designating the parties in proper context on this appeal:

"A group annuity contract, designated 'Group Annuity Contract GA–242' was issued by defendant Aetna Life Insurance Company to the Greyhound Corporation, as employer, and a substantially similar policy was issued by the defendant Connecticut General Life Insurance Company to said Greyhound Corporation, as employer, effective July 1, 1941. Said group annuity contracts are contributory, in that both the employer and employee make contributions, and in general provide for the purchase of retirement annuities for certain employees of Greyhound who qualify under these group annuity contracts and who agree to make the required contributions thereunder.   Contributions of the employer and employee are not accumulated in any fund but are applied each month to purchase a deferred annuity for the employee, the total of all of which deferred annuities equals the employee's retirement annuity.   A covered employee who makes contributions may not withdraw his contributions while still in the employ of Greyhound.   However, in the event an employee under the retirement plan terminates his employment with Greyhound before his normal retirement date, he may elect either to receive a paid-up annuity under said contracts commencing on his

normal retirement date in an amount determined under said contracts on the basis of length of the employee's services with and earnings from Greyhound, or in lieu of such deferred annuity, a termination benefit equal to his contributions with interest.

"Among other provisions in the contract were the following, of importance in this matter:

" '*This contract constitutes the entire contract between the parties, and shall be construed in accordance with the laws of Illinois where it is issued and delivered.*

" '*Neither the employee, nor the beneficiaries, nor the joint annuitants may assign the annuities or other benefits payable under this contract.*

" '*The annuities and other benefits payable under this contract shall be exempt from the claims of creditors of the employees, the beneficiaries, or the joint annuitants. If the terms of this paragraph are contrary to the laws governing in a particular set of circumstances, then, as to that set of circumstances, the annuities and other benefits shall be exempt to the maximum extent permitted by law.*'

"On July 1, 1958, Rudolph B. Shepherd, then an employee of Greyhound, became eligible to participate under the group annuity contracts and began making his contributions thereunder. At this time Shepherd received a certificate from Greyhound which briefly indicated the terms and conditions of the group annuity contracts, explaining the plan and setting forth the nonassignability of the annuities and other benefits payable thereunder and indicating that they were exempt from claims of creditors, et cetera. Further, said booklet, captioned 'Employees' Retirement Plan,' provided on page 20, in part, as follows:

" '*Withdrawal of Contributions:*

" '*28. You may not withdraw your contributions so long as you remain in the service of the Greyhound Lines, nor borrow against them at any time, for to do so would defeat the purpose of the Plan.*'

"Despite the language of said group annuity contracts quoted above, assignments of contributions under said contracts by employees of Greyhound to plaintiff and others were recognized by the defendant insurance companies without qualification for the period from 1943 through 1955. However, in 1955, the insurance companies gave notice to Greyhound, and Greyhound gave notice by letter to plaintiff Detroit Greyhound Employees Credit Union on March 10, 1955, that the insurance companies would not recognize any purported assignments from Greyhound employees. On August 2, 1955, Greyhound sent a second letter to said plaintiff, specifically stating that the insurance companies and Greyhound would not recognize such assignments taken by plaintiff after September 1, 1957, whether such assignments were taken before or after that date. Subsequently, through negotiations between defendants and plaintiff, the defendants agreed to extend the deadline for the recognition of assignments by Greyhound employees to plaintiff until June 30, 1958, with the understanding that such assignments would not be recognized after June 30, 1958, whether such assignments were given before or after that date.

"On June 25, 1958, which was before Shepherd became eligible to participate under the group annuity contracts, he, in writing, attempted to assign to plaintiff, as security for a debt he then owed plaintiff, all of his future contributions under the group annuity contracts.

"On July 21, 1958, plaintiff sent notice to Greyhound of Shepherd's purported assignment. On July 28, 1958, Greyhound, and on August 4, 1958, the insurance companies, notified the plaintiff of their refusal to recognize or be bound by said purported assignment, indicating that they were relying on their previous notification to plaintiff that the defendants would not recognize any assignments after June 30, 1958.

"On August 19, 1959, Shepherd terminated his employment with Greyhound prior to his normal re-

tirement date, and consistent with one of the options available to him under the said group annuity contracts, he elected, in writing, to receive an immediate termination benefit, in an amount equal to his contributions, with interest as specified in said group annuity contracts, and upon receipt of notice from Greyhound (to whom Shepherd exercised his option as aforesaid), Aetna, as administrator of the group annuity contracts for the two insurance companies, issued a check payable to Shepherd's order in the amount of $90.54, representing his termination benefits under the group annuity contracts, and transmitted this check to Greyhound for delivery to Shepherd and the same was delivered to him by Greyhound on August 19, 1959." (Emphasis added.)

The threshold question to be decided is, which State's law should apply? The master contract which created the rights of the plaintiff was signed in Connecticut, delivered in Illinois, and performed throughout the United States. The policy provided that Illinois law should apply. The general rule is stated in 29 Am Jur, Insurance, § 33, "A policy of group insurance is governed, as between employer and insurer, by the law of the place of issuance and delivery of the policy, where the policy expressly provides that it is to be governed by such law." *Boseman* v. *Connecticut General Life Insurance Co.* (1937), 301 US 196 (57 S Ct 686, 81 L ed 1036, 110 ALR 732).

The *Boseman Case* concerned which State law to apply in determining the validity of a clause in a group insurance contract requiring notice by the employee of injury within 60 days of termination of employment. In that case, the master contract was signed in Connecticut and delivered in Pennsylvania. The policy stated that Pennsylvania law was to apply and that State allowed the 60-day notice provision. The certificate was delivered to the employee

in Texas and payroll deductions were made there. The employee worked in Texas where the law held the 60-day provision unreasonable.  The Court held that Pennsylvania law governed the relationship of the insurer and the employer, the parties to the contract.  It further held that the employee accepted all the provisions of the master contract, including the provision that Pennsylvania law governs the policy, by applying for coverage thereunder.  The Court found that the purpose of inserting this provision in the contract was to insure uniformity of its interpretation.

It is clear the case at bar is analogous.  The policy was delivered in Illinois, the parties desired uniformity of interpretation and intended Illinois law to govern their contractual relationship.  Therefore, Illinois law applies in accord with *Boseman, supra.*

The next question is, is the nonassignability of benefits provision valid and enforceable under Illinois law?  The general rule concerning the limiting of the right to assign is stated in *Allhusen* v. *Caristo Construction Corp.* (1952), 303 NY 446 (103 NE2d 891).

"In the light of the foregoing, we think it is reasonably clear that, while the courts have striven to uphold freedom of assignability, they have not failed to recognize the concept of freedom to contract.  In large measure they agree that, where appropriate language is used, assignments of money due under contracts may be prohibited.  When 'clear language' is used, and the 'plainest words  *  *  *  have been chosen', parties may 'limit the freedom of alienation of rights and prohibit the assignment.' *State Bank* v. *Central Mercantile Bank,* 248 NY 428, 435 (162 NE 475, 477, 59 ALR 1473).  We have now before us a clause embodying clear, definite and appropriate language, which may be construed in no other way but that any attempted assignment of

either the contract or any rights created thereunder shall be 'void' as against the obligor. One would have to do violence to the language here employed to hold that it is merely an agreement by the subcontractor not to assign. The objectivity of the language precludes such a construction. We are therefore compelled to conclude that this prohibitory clause is a valid and effective restriction of the right to assign.

"Such a holding is not violative of public policy. Professor Williston, in his treatise on Contracts, states (Vol 2, § 422, p 1214): 'The question of the free alienation of property does not seem to be involved.' The New York cases do not hold otherwise, *State Bank* v. *Central Mercantile Bank,* 248 NY 428, 435 (162 NE 475, 477, 59 ALR 1473). Plaintiff's claimed rights arise out of the very contract embodying the provision now sought to be invalidated. The right to moneys under the contracts is but a companion to other jural relations forming an aggregation of actual and potential interrelated rights and obligations. No sound reason appears why an assignee should remain unaffected by a provision in the very contract which gave life to the claim he asserts."

Illinois cases are in line with the general rule. *Lain* v. *Metropolitan Life Insurance Co.* (1944), 388 Ill 576 (58 NE2d 587), *Mortician Acceptance Co., Inc.,* v. *Metropolitan Life Insurance Co.* (1945), 389 Ill 81 (58 NE2d 854). These cases involved an attempted assignment of benefits due under insurance policies that contained provisions prohibiting any assignment. The Court held the assignments valid on the grounds that such a prohibition of assignment is only effective before loss. *Ginsburg* v. *Bull Dog Auto Fire Insurance Association of Chicago* (1928), 328 Ill 571 (160 NE 145). After loss the claim is a chose in action and assignable under section 18

of the practice act (Smith-Hurd Rev Stat 1927, c 110).

Under Illinois law the present prohibition of assignment is valid and enforceable. The money that the assignment concerned was not due until the employee performed the conditions precedent, *i.e.*, terminated his employment and exercised his option to recover the money paid into the fund.

This raises the question of whether the nonassignability clause may be enforced in Michigan.

"The substantive provisions of a contract, valid by the law of the State where the contract is made and to be performed, create a right of property enforceable in another jurisdiction provided it is not contrary to the public policy of the forum." *Annis* v. *Pilkewitz* (1938), 287 Mich 68, 77.

No Michigan cases or statutes stating a public policy against enforcing nonassignment of benefit clauses in insurance policies have been cited. We find no authority directly on point, but in an analogous case the Supreme Court upheld such a clause. *Bankers' Life Co.* v. *Miller* (1922), 219 Mich 161. Therefore, the clause valid under the law to be applied as stipulated in the contract is enforceable in Michigan.

Plaintiff contends that even if the clause is effective, defendants cannot enforce it due to their irrevocable waiver.

Both parties agree there was a waiver of this clause by defendants' conduct between the inception of the plan in 1941 and March 10, 1955. In 1955 defendant informed plaintiff that assignments after September 1, 1957, would not be recognized. This date was later extended to June 30, 1958. Plaintiff acknowledges receipt of this notice, but contends it has no legal effect. Plaintiff cites 56 Am Jur, Waiver, § 24, for the proposition that one who re-

linquishes a right cannot reclaim it without consent of the other party. Defendants reply that this is the rule only in case the party tries to enforce the waived clause for that breach and not future breaches.

" 'If the parties mutually adopt a mode of performing their contract differing from its strict terms * * * or if they mutually relax its terms by adopting a loose mode of executing it, neither party can go back upon the past and insist upon a breach because it was not fulfilled according to its letter.' * * *

" 'He (either party) may insist upon a different mode of observing it in the future and require a return to the terms of the contract.' " *Goldblum* v. *United Automobile, Aircraft & Agricultural Implement Workers of America, Ford Local No. 50* (1947), 319 Mich 30, 37.

Corbin discusses the power of a party to re-establish a condition that has been eliminated by waiver. He concludes that a mere waiver not supported by consideration is revocable any time as long as reasonable notice is given to the other party. The notice eliminates any claim of reliance the opposite party might make. 3A Corbin, Contracts, § 764.

In summary, the clause is interpreted by Illinois law, it is valid there, it does not offend Michigan public policy, has not been waived irrevocably, and the defendant is not estopped to assert it after June 30, 1958, to assignments made after March 10, 1955.

Other questions raised on appeal have been considered and deemed not to be of such import as to require discussion.

Affirmed. Costs to appellees.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.