(No. 45471.—

JEAN L. HOFELD, Adm'x, Appellee, v. NATIONWIDE LIFE INSURANCE COMPANY, Appellant.

*Opinion filed January 21, 1975.*

O'Brien, Hanrahan, Wojcik & Conniff, and Torshen, Fortes & Eiger, Ltd., both of Chicago (Jerome H. Torshen and Lawrence H. Eiger, of counsel), for appellant.

William J. Harte, Ltd., and Albert F. Hofeld, Jr., both

of Chicago (William J. Harte and Philip Rock, of counsel), for appellee.

Charles D. Kuhnen, of Chicago, and George B. Gillespie, of Springfield (Gillespie, Burke & Gillespie, of counsel), for *amicus curiae* Health Insurance Association of America.

MR. JUSTICE DAVIS delivered the opinion of the court:

Plaintiff's decedent filed suit in the circuit court of Cook County wherein judgment was entered in favor of plaintiff and against the defendant in the sum of $17,516.46, plus interest. The appellate court affirmed (7 Ill. App. 3d 226), and we granted leave to appeal.

The National Association of Women's and Children's Apparel Salesmen, Inc. (NAWCAS), a Georgia corporation, with its office in Atlanta, Georgia, is a national organization of traveling salesmen who sell women's and children's apparel. Albert F. Hofeld, plaintiff's decedent, a resident of Illinois, was a member of NAWCAS. The defendant, Nationwide Life Insurance Company, issued two group health insurance policies to NAWCAS, making available certain coverage for NAWCAS members.

Plaintiff's decedent applied for coverage under the basic plan (hospitalization, medical and surgical) on July 29, 1962; the application was accepted by the defendant on August 15, 1962. The plaintiff's decedent applied for coverage under the optional plan (disability income) on July 13, 1963, and the application was accepted by the defendant on August 1, 1963.

In 1964 and 1965, the defendant paid benefits under both policies for claims of plaintiff's decedent. In November, 1965, the defendant stopped paying benefits on the ground that plaintiff's decedent had made material fraudulent representations in his application for the optional disability income coverage. In January of 1966, the

defendant notified the plaintiff's decedent that no further benefits would be paid under either policy, since his case was under investigation.

Mr. Hofeld commenced this action in March of 1966, seeking a declaratory judgment that this coverage remain in force under both policies, and, upon his death, the administratrix of his estate was substituted as plaintiff. Mr. Hofeld also paid all the premiums until his death.

The defendant insurer asserted by way of an affirmative defense to this action that fraudulent statements were made in the second application for insurance. The plaintiff's reply denied the allegations of fraud asserted in the affirmative defense. The defendant also counterclaimed for a return of the benefits previously paid by it. The defendant moved for summary judgment on the counterclaim, which alleged fraudulent misrepresentations.

In opposition to this motion, the plaintiff asserted the provisions of section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 766), which provides:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. This section shall not apply to policies of marine or transportation insurance."

Plaintiff's affidavits demonstrated that a copy of the application was not attached either to the master policy issued to NAWCAS or to the certificate of insurance issued to plaintiff's decedent. Plaintiff then moved to withdraw her reply to the affirmative defense and her answer to the counterclaim and to strike the affirmative defense and to

dismiss the counterclaim.

The trial court held that section 154 of the Illinois Insurance Code was applicable and that the defendant could not assert the defense of fraudulent misrepresentations in the application because it was not attached either to the master policy or to the individual certificate. Plaintiff's motions thus were granted, and judgment was entered for the plaintiff in the sum of $17,516.46, plus interest.

Additional relevant facts are that the master group insurance policies issued by defendant to NAWCAS each provided: "This Policy is delivered in the state specified above [Georgia] and is governed by the laws thereof."

The defendant is an Ohio insurance corporation. The two group health insurance policies were applied for by NAWCAS in Georgia, and the policies were issued and delivered to NAWCAS in Georgia. Solicitation of members for insurance coverage was made through NAWCAS News, a trade periodical. Members normally would make application for insurance; the individual insurance certificates were issued either from Georgia or Ohio. The numerous NAWCAS members covered by the insurance programs reside throughout the United States.

The plaintiff's decedent was at all times a resident of Illinois. He maintained his business in Illinois. He mailed his application for insurance from Illinois and received the certificates in Illinois. He likewise mailed his premiums from Illinois and received his benefit payments in this State.

The dispute in this case involves only the second policy. The threshold question is whether the policy provision that the law of Georgia shall govern is to be given effect as to the Illinois insured. It is conceded that under Georgia law the application would not have to be attached to the master group policy or certificate in order for the insurance company to raise the defense of fraudulent misrepresentation. The appellate court held that the public

policy of Illinois would be violated if the Georgia law were to govern.

Group insurance policies are those issued by insurance companies to a group policyholder, such as an employer, association or union. Certificates are then issued to the participating insureds, such as employees or members. The master policy is the primary contract and must first be looked to in construing group insurance policies. (1 Appleman, Insurance Law and Practice sec. 46 (1965).) Commonly, the certificates summarize the more important provisions of the policy terms as they apply to the insured. Often it is stated that the certificates do not constitute a part of the insurance contract. (44 Am. Jur. 2d *Insurance,* sec. 1870 (1969).) It may even be suggested by statute that only the master policy, the application of the employer and the individual applications shall constitute the entire contract. (Ill. Rev. Stat. 1973, ch. 73, par. 979(2)(a).) The individual insured normally sees only the certificate issued to him. If it contains provisions conflicting with those in the master policy, the certificate normally will be held to control. Courts have so held either under the theory that the certificates are a part of the total contract under the particular language of the certificate or on the theory of estoppel. See *Thieme v. Union Labor Life Insurance Co.,* (1957), 12 Ill. App. 2d 110, 114-115; *John Hancock Mut. Life Ins. Co. v. Dorman* (9th Cir. 1939), 108 F.2d 220; *Parks v. Prudential Ins. Co. of America* (E.D. Tenn. 1951), 103 F. Supp. 493; *Williams v. American Casualty Co.* (1971), 6 Cal. 3d 266, 491 P.2d 398, 98 Cal. Rptr. 814; 1 Appleman, Insurance Law and Practice sec. 46 (1965).

Here there is no conflict between the certificate and the master policy insofar as the applicable law is concerned. The certificate is silent in this regard. The insured normally must be charged with the knowledge of the terms of the master policy. *Phelps v. Elgin Academy* (1970), 125 Ill. App. 2d 364, 368; *Williamson County v. Standard*

*Accident Insurance Co.* (1961), 32 Ill. App. 2d 363, 366; *Roehrig v. Missouri State Life Insurance Co.* (1929), 251 Ill. App. 434, 441.

With regard to the applicable law in this case, insurance contract provisions may be governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a relationship to the general contract. And, generally, the parties may validly stipulate as to the applicable law. 12 Appleman, Insurance Law and Practice sec. 7074 (1943); Annot., 53 A.L.R.3d 1095 (1973).

The Restatement (Second) of Conflict of Laws, in Comment (h) to section 192 (1971), states:

> *"Group life insurance.* In the case of group life insurance, rights against the insurer are usually governed by the law which governs the master policy. This is because it is desirable that each individual insured should enjoy the same privileges and protection. So where an employer arranges for group life insurance for its employees, the rights of a particular employee against the insurer will usually be determined, in the absence of an effective choice-of-law clause and at least as to most issues, not by the local law of the state where the employee was domiciled and received his certificate but rather by the law governing the master policy with respect to that issue. This will usually be the state where the employer has his principal place of business.
>
> Choice-of-law provisions contained in group life insurance policies are more likely to be given effect than in the case of ordinary life insurance. This is because the organization or individual which procures the master policy will usually have a stronger bargaining position than an

individual insured with the result that the choice-of-law provision is less likely to have a 'take-it-or-leave-it' character."

The comment, applicable to group life insurance, is equally applicable to group health insurance.

Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed. *Reighley v. Continental Illinois Nat. Bank and Trust Co.* (1945), 390 Ill. 242, 249.

The leading case in the area of group insurance policies is *Boseman v. Connecticut General Life Insurance Co.* (1937), 301 U.S. 196, 81 L. Ed. 1036, 57 S. Ct. 686. In *Boseman* a group insurance policy covering life and disability was issued and delivered by the insurer in Pennsylvania covering employees of Gulf Oil Corporation. The insurer was domiciled in Connecticut. Gulf Oil was situated in Pennsylvania. Petitioner resided in Texas and received his certificate of insurance there. The basic policy provided that it should be governed by the laws of Pennsylvania. The issue before the court was whether the laws of Pennsylvania, or those of Texas, were controlling. Under Texas law the particular policy provision applicable to petitioner was void and could not have been asserted to avoid the coverage.

The Supreme Court refused to hold that the law of Texas was applicable because of delivery of the certificate to the insured there. It noted that the conclusion that the law of Pennsylvania governed the policy provision was supported "not only by the making and delivery of the contract of insurance in that State, the declaration in the policy that Pennsylvania law shall govern and petitioner's acceptance of the insurance according to the terms of the policy but also by the purpose of the parties to the contract that everywhere it shall have the same meaning and give the same protection and that inequalities and confusion liable to result from application of diverse state

laws shall be avoided." 301 U.S. at 206, 81 L. Ed. at 1042.

*Boseman* was criticized in *John Hancock Mutual Life Insurance Co. v. Schroder* (5th Cir. 1965), 349 F.2d 406; and in *Nelson v. Aetna Life Insurance Co.* (W.D. Mo. 1973), 359 F. Supp. 271, 294, but it has never been overruled.

In *Woelfling v. Great-West Life Assurance Co.* (1972), 30 Ohio App. 2d 211, 285 N.E.2d 61, 59 Ohio Op. 2d 351, 53 A.L.R.3d 1077, the group insurance policy in question was issued to the American Dental Association and delivered to it in Illinois. The insurer was a Canadian corporation. The insured, Dr. Woelfling, was a member of the association and a resident of Ohio. The certificate of insurance apparently was delivered to him in Ohio. A question arose as to whether purported misrepresentations in the application for insurance by the insured precluded recovery of death benefits. This determination involved initially deciding whether the law of Illinois or the law of Ohio was to govern. Under the latter, the court indicated the recovery of the benefits would not have been precluded. Under the former, it would. Both the master policy and the certificate issued to the insured provided that Illinois law governed. The court held that absent a statutory prohibition the group policy, as in any other contract, can provide for a system of State law which should govern the contract.

Interestingly, in applying Illinois law, the Ohio court held that the defense of fraudulent misrepresentation was available to the insurer even though the application containing such misrepresentation was not attached to the insurance certificate. It noted that Illinois had specific statutory provisions relating to group insurance. It referred to section 231 of the Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 843) relating to group life policies and subparagraph (b) thereof, which stated that all such policies issued and delivered in this State must contain:

"(b) A provision that the policy, the application of

the employer or trustee of any association of employees and the individual applications, if any, of the employees insured shall constitute the entire contract between the parties, and that all statements made by the employer or trustee or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, *and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application.*" (Emphasis ours.)

The Ohio court observed that under Ohio law the failure to attach a copy of the application for insurance to the certificate of Dr. Woelfling, or to forward a copy thereof to him, precluded the insurer from raising the defense of fraudulent misrepresentation. The court then stated: "However, under the law of Illinois, which is dispositive of this issue, the failure of the insurance company to send a copy of the application to the insured or his beneficiary does not preclude the company from defending on the grounds of misrepresentation. Ill. Rev. Stat., Chapter 73, Section 843; *Continental Assur. Co. v. Henson,* 297 Ky. 764, 181 S.W.2d 431." (30 Ohio App. 2d 211, ——, 285 N.E.2d 61, 67, 59 Ohio Op. 2d 351, ——.) We agree with this construction of section 231 of the Insurance Code. Ill. Rev. Stat. 1973, ch. 73, par. 843.

In the instant case we are concerned with a group accident and health policy as opposed to a group life insurance policy. However, the Illinois statute contains specific reference to group health policies as well. Like the provision applicable to group life policies, it provides that such group policies issued and delivered in the State must contain a provision that the policy, the application of the group policyholder, and the application of the individual insureds all constitute the entire contract. They must further provide that all statements of the group policy-holder and individual insureds are deemed representations and not warranties "and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application." (Ill. Rev. Stat. 1973,

ch. 73, par. 979(2)(a).) There is no requirement that a copy of the application must be sent to the insured or attached to the certificate of insurance, which the statute subsequently indicates need not be sent to the insured.

In *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Insurance Co.* (1967), 7 Mich. App. 430, 151 N.W.2d 852, *rev'd on other grounds* (1969), 381 Mich. 683, 167 N.W.2d 274, the court stated that the group insurance policy there under consideration was signed in Connecticut, delivered in Illinois to the group policyholder, and performed in Michigan and throughout the United States. The policy provided that Illinois law should govern, and the court gave effect to that provision. (7 Mich. App. 430, 436-437, 151 N.W.2d 852, 855-856.) The prevailing view is that a choice of law made in the basic group policy will be honored by the courts, particularly where that selection is the State of the group policyholder. We believe that to be the better view, and the one to be followed in this State so long as the particular statutory provision to be applied does not conflict with the public policy of this State, and so long as the certificate received by the insured does not contain conflicting provisions.

As we have earlier indicated, there were no provisions in the certificates issued in this case which conflicted with the basic policy provision that the law of Georgia should govern. Nor do we believe that the applicable Georgia law, in not requiring the application to be attached to the certificate for the defense here raised, is contrary to the public policy of this State.

The provisions of section 154 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 766) require the misrepresentation or false warranty either to be stated in the policy or in the written application and attached to the policy if it is to be the basis of a valid defense. This sets forth the law of this State in regard to insurance generally.

However, section 362a of the Insurance Code (Ill.

Rev. Stat. 1971, ch. 73, par. 974a) provides: "The provisions of sections 356a to 359a, both inclusive, shall not apply to or affect *** (3) any group policy of insurance (unless otherwise specifically provided); ***." Section 359a of the Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 971a), relating to accident and health insurance generally, likewise requires that the application be attached to or endorsed on the policy to be the basis of a defense.

Additionally, section 367 of the Insurance Code (Ill. Rev. Stat., 1972 Supp., ch. 73, par. 979(2)), relating specifically to group accident and health insurance provides as follows:

"(2) *** No policy of group accident and health insurance may be issued or delivered in this State unless a copy of the form thereof shall have been filed with the department and approved by it in accordance with Section 355, and it contains in substance those provisions contained in section 357a as may be applicable to group accident and health insurance and the following provisions:

(a) A provision that the policy, the application of the employer, *** and the individual applications, if any, of the employees, members or employees of members insured shall constitute the entire contract between the parties, and that all statements made by the employer, *** or by the individual employees *** shall (in the absence of fraud) be deemed representations and not warranties, *and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application.*" (Emphasis ours.)

This expression of public policy with reference to group accident and health insurance, like that relating to group life insurance, requires only that a defense of misrepresentation must be based on a *written* application. The application need not be attached either to the basic policy or to the certificate received by the insured in order to use a misrepresentation as a defense to the policy.

The policy expressed in the specific statutory refer-

ences to group policies should prevail over the general policies expressed in sections 154 and 359a of the Insurance Code. *People ex rel. Goodman v. Wabash R.R. Co.* (1947), 395 Ill. 520, 540; *Gibbs v. North American Co. for Life, Accident and Health Ins.* (1971), 2 Ill. App. 3d 496; *Anderson v. John Hancock Mutual Life Insurance Co.* (1942), 316 Ill. App. 338, 343.

We conclude that the Georgia law is applicable to the issues presented in this case and that the circuit and appellate courts erred in holding to the contrary. Accordingly, the judgments of the circuit and appellate courts are reversed and the cause remanded to the circuit court for further proceedings consistent herewith.

*Reversed and remanded, with directions.*