### JANICE DOTY UNLIMITED, INC., Plaintiff,

v.

### William J. STOECKER and Grace Stoecker, Defendants.

### No. 87 C 9871.

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1988.

Miriam F. Miquelon, Miquelon & Associates, Chicago, Ill., for plaintiff.

---

Neal F. Thompson, Lord Bissel & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This diversity litigation arises out of a contract between plaintiff Janice Doty Unlimited, d/b/a Nannys Unlimited ("Doty"), and defendants William J. and Grace M. Stoecker ("the Stoeckers") for the placement and services of a domestic professional. Doty brought a suit for breach of contract against the Stoeckers, and the Stoeckers responded with a counterclaim. The Stoeckers now move for leave to file an amended counterclaim that adds an additional count.[1] For the reasons set forth below, we deny the Stoeckers' motion.

### Factual Background

Doty is a Georgia corporation that specializes in placing domestic and child care help on a nationwide basis. Some time in 1985, the Stoeckers received letters from Doty about the various nanny services that Doty provided. These letters contained representations about the experience, qualifications, training and screening of the nannies provided by Doty. Relying on these representations, as well as on representations in the contract, the Stoeckers entered into a contract for nanny services with Doty on August 7, 1986.

According to the Stoeckers, the services provided by Doty failed to live up to the representations. In particular, the Stoeckers claim that the nannies sent by Doty were not qualified or trained properly, and

that Doty failed to conduct the necessary background and security checks. As a result, the Stoeckers continue, their children were improperly cared for, and, in one instance, their two-year old son Jonathan was struck by one of Doty's nannies Barbara Crawford. The Stoeckers assert that Doty's action violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), and Count II of their counterclaim seeks unspecified actual and exemplary damages as provided under that Act.[2]

### Discussion

Doty gives two arguments why we should not grant leave to file the amended counterclaim. First, Doty argues that the Stoeckers cannot raise a claim under an Illinois statute since the contract, by its terms, is governed by Georgia law. Second, Doty asserts that this Court has no subject matter jurisdiction over Count II because the Stoeckers' claim is less than the requisite jurisdictional amount.[3] We must consider the jurisdictional issue first, since, without jurisdiction, we have no authority to decide the Stoeckers' claims.

### Jurisdictional Amount

Doty appears to make two related arguments concerning the jurisdictional amount, one based on form and the other based on substance. The formal argument is that the jurisdictional amount—in excess of $10,000 exclusive of interest and costs—is never alleged. It is true that the Stoeckers do not directly plead that the matter in controversy exceeds $10,000; nor do they

1. Plaintiff and defendants cannot agree on how this additional count should be numbered. In the counterclaim, the Stoeckers purport to adopt and reallege the two counts of their previously filed counterclaim as Counts I and II, and thus label the new count as Count III. However, as Doty notes, the previously filed counterclaim had only one count, so the new count should be Count II. Accordingly, we will label the new count as Count II.

2. Apparently some time after the incident with Ms. Crawford, Doty sent the Stoeckers a domestic more to their liking. Doty asserts in its complaint that the Stoeckers hired this domestic away from Doty in violation of the contract, which provided that the Stoeckers would not

directly hire any of the domestics supplied by Doty. Doty's complaint is described more fully in our opinion of April 6, 1988, and is not dealt with here. Similarly, we do not discuss any of the issues raised by Count I of the Stoeckers' counterclaim.

3. Unlike Count I, which is a compulsory counterclaim, Count II is a permissive counterclaim because it does not arise out of the same transaction or occurrence as Doty's claim. Fed.R. Civ.P. 13(b). A permissive counterclaim must be supported by independent grounds of federal jurisdiction and therefore must exceed $10,000 exclusive of interest and costs. *See generally*, 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1422 (1971).

ever state what amount of damages they claim. They do, however, state that jurisdiction is pursuant to 28 U.S.C. § 1332(a), and quote the portion of § 1332(a) which provides that the district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs." Although this is not the most artful way of pleading, we believe that a jurisdictional amount in excess of $10,000 may fairly be inferred from the defendants' complaint. "Imperfections in pleading style will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction." *Loss v. Blankenship*, 673 F.2d 942, 950 (7th Cir.1982); *see also Local Division 519, Amalgamated Transit Union v. La-Crosse Municipal Transit Utility*, 585 F.2d 1340, 1349 (7th Cir.1978).

The substantive argument is a more difficult one. Doty argues that the allegations of the Stoeckers' counter-complaint indicate that the matter in controversy does not exceed $10,000, exclusive of interest and costs. We must determine this issue under the "legal certainty" test established fifty years ago by the United States Supreme Court:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.
>
> It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Although the determination of the value of the matter in controversy "is a federal question to be decided under federal standards ... the federal courts must ... look to state law to determine the nature and extent of the right to be enforced in a diversity case."

*Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 352–53, 81 S.Ct. 1570, 1593, 6 L.Ed.2d 890 (1961); *see also* 14A C. Wright, A. Miller & F. Cooper, *Federal Practice and Procedure* § 3702 at 24 (2d ed. 1985). Thus, we must look to Illinois law to determine whether the Stoeckers could, if they prove their case, recover more than $10,000 for a violation of the Consumer Fraud Act.[4]

The Stoeckers' claim meets the legal certainty test. To be sure, the allegations in the Stoeckers' counterclaim probably support no more than nominal actual damages. Count II alleges no pecuniary injury, and, although it does allege that a Doty employee struck Jonathan Stoecker, it does not allege that Jonathan suffered any injury because of this.

The Stoeckers, however, also seek exemplary or punitive damages. Section 10a of the Consumer Fraud Act provides that a court "in its discretion may award actual damages or any other relief which the court deems proper." Ill.Rev.Stat. ch. 121–½, § 270a(a) (1987).[5] Illinois courts have held that punitive damages are available under section 10a but only if the violation of the Act was "committed with fraud, actual malice, deliberate violence or oppression, or when a defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others." *Warren v. LeMay*, 142 Ill.App.3d 550, 579, 96 Ill.Dec. 418, 437, 491 N.E.2d 464, 483 (5th Dist.1986); *see also Tague v. Molitor Motor Co.*, 139 Ill.App.3d 313, 317, 93 Ill. Dec. 769, 772, 487 N.E.2d 436, 439 (5th Dist.1985). The Stoeckers' counterclaim alleges that the letters they received from Doty were "false and deceptive." Defendants' Counterclaim, Count II, para. 6. Although not stated in so many words, we believe that this is sufficient to state a claim in fraud. A finder of fact, if it believed the fraud claim, could award punitive damages, and this award of punitive

---

4. For purposes of determining jurisdiction, which must be done first, we will assume that the Consumer Fraud Act applies. We decide below whether it actually does apply.

5. There are currently two versions of section 10a on the books, because the Illinois General Assembly passed two versions of an amendment in the same session. This particular provision, however, is the same in both versions.

damages would be upheld unless it was clearly excessive. *Tague,* 139 Ill.App.3d at 318, 93 Ill.Dec. at 772, 487 N.E.2d at 439. At this stage of the litigation, we cannot say that punitive damages over $10,000 would be clearly excessive. Thus, we cannot say to a legal certainty that the Stoeckers' claim under Count II would not exceed $10,000, and thus we have jurisdiction to consider Count II.

## The Choice of Law

 That leaves the question of whether the Illinois Consumer Fraud Act applies at all in this case. Paragraph 12 of the contract between Doty and the Stoeckers reads in pertinent part:

> This contract is entered into in the State of Georgia and both parties agree that the law of the State of Georgia, or the United States of America where applicable, shall apply and shall be the governing law.

Doty argues that this provision prohibits the Stoeckers from bringing suit under Illinois law. Doty notes that in support of a motion to dismiss its complaint, the Stoeckers argued that Georgia law applied. Doty also notes that in denying the motion to dismiss, we stated, "the Agreement provides that Georgia's law shall be the governing law. Both parties agree that this provision applies." 684 F.Supp. 973, 975 n. 4 (N.D.Ill.1988). These facts, however, are not dispositive. In our prior opinion, we considered the parties' rights under the contract. Here, by contrast, we must consider the circumstances surrounding the execution of the contract, so the question of what law applies requires independent consideration.

Nonetheless, we reach the same result as in our previous opinion. The issue here is essentially one of the conflict of laws. It is settled beyond peradventure that a federal court sitting in diversity must apply the substantive law of the state in which it sits, and this includes that state's conflict of laws principles. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Travelers Insurance Co. v. Transport Insurance Co.,* 846 F.2d 1048, 1051 (7th Cir.1988). Under Illinois law that goes back to the 1850's, a contractual choice of law provision should be given effect "where it is not dangerous, inconvenient, immoral nor contrary to the public policy of the local government." *McAllister v. Smith,* 17 Ill. 328, 334 (1856); *see also Hofeld v. Nationwide Life Insurance Co.,* 59 Ill.2d 522, 532, 322 N.E.2d 454, 460 (1975). In addition, "the public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties." *Potomac Leasing Co. v. Chuck's Pub, Inc.,* 156 Ill.App.3d 755, 759, 109 Ill.Dec. 90, 93, 509 N.E.2d 751, 754 (2d Dist.1987).

The *Potomac Leasing* case applied this principle to the Consumer Fraud Act. In that case, the defendants, an Illinois tavern and its owner, entered into a contract with the plaintiff for the lease of a french fryer. The contract provided that Michigan law would govern. Some time after the contract was signed, the plaintiff sued the defendants, alleging they were in default on the contract. Defendants denied being in default but also raised an affirmative defense based on the Consumer Fraud Act. Specifically, the defendants argued that the lease contract was void because it did not contain a notice of cancellation statement, which is required by the Act and which informs the consumer that he or she may cancel the contract within three business days of execution. There was no similar notice of cancellation requirement under Michigan law, but nonetheless, the court held that Illinois public policy did not override the choice of Michigan law. *Id.* at 759, 109 Ill.Dec. at 93, 509 N.E.2d at 754. In addition, the court noted that there was a reasonable relation between the transaction and Michigan, since the plaintiff had its principal place of business in Michigan, the contract was executed there, and lease payments were to be sent there. *Id.* at 759–60, 109 Ill.Dec. at 94, 509 N.E.2d at 755.[6]

---

6. The court also rejected defendants' argument that the lease agreement was an adhesion contract or was unconscionable, and that therefore the choice of law should not be enforced. *Id.* at

The logic of *Potomac Leasing* applies to the choice of Georgia law in the contract between Doty and the Stoeckers. The choice of Georgia law over Illinois law is not contrary to the public policy of Illinois. Like Illinois, Georgia has a consumer protection act, the Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10–1–390 to 10–1–407 (1982 & Supp.1988). The Stoeckers have not indicated how the Illinois and Georgia laws differ and how the differences, if any, violate public policy. Our own research reveals that both acts prohibit "unfair or deceptive acts." *See* Ga.Code Ann. § 10–1–393 (Supp.1988); Ill.Ann.Stat. ch. 121–½, § 262 (Smith–Hurd Supp.1988). Any differences appear to be in the details, and the public policy concerns implicated by these details are not "strong" or "of a fundamental nature." Accordingly, they do not "justify overriding the chosen law of the parties." *Potomac Leasing*, 156 Ill. App.3d at 759, 109 Ill.Dec. at 93, 509 N.E. 2d at 754. In addition, we note that Georgia is "rationally related" to the contract, since Doty has its principal place of business in Georgia and trains its nannies there.

*Potomac Leasing*, however, differs from the present case in one significant respect. In *Potomac Leasing*, the court used the choice of law provision to determine the rights of the parties after they had entered into the contract. Here, the question is whether the choice of law provision should apply to the alleged fraudulent misrepresentations that took place *before* the parties entered into the contract. The timing, however, is of no consequence, as illustrated by *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975). In *Hofeld*, the plaintiff's decedent applied for group health insurance with the defendant and was accepted. The defendant, however, stopped paying benefits, so the decedent brought suit. The defendant, asserting that the decedent made fraudulent statements when he applied for the insurance, counterclaimed for the benefits previously paid. The plaintiff, who continued the suit after the decedent's death, responded by invoking the Illinois Insurance Code, which provided that a misrepresentation would not defeat the policy unless it was made in the application, and the application was attached to the policy or the certificate of insurance. The plaintiff demonstrated that a copy of the application in which the misrepresentations allegedly were made was not attached to the master group policy or to the certificate of insurance issued to the decedent. The plaintiff claimed the alleged misrepresentations therefore could not defeat the decedent's policy. The defendant responded that the contract had a choice of law provision specifying Georgia law, and under Georgia law, the application containing the misrepresentations did not have to be attached to the policy to defeat plaintiff's claims. The Illinois Supreme Court agreed that Georgia law applied, even though the misrepresentation allegedly took place before the decedent entered into the contract for insurance. "Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed." *Id.* at 529, 322 N.E.2d at 458. The application of these principles to the present cause is straightforward. Doty and the Stoeckers expressed an intent to apply Georgia law to their contract, and this intent should be followed. Accordingly, the Illinois Consumer Fraud Act should not apply, even to the alleged misrepresentations that took place between the parties who executed the contract.

The Stoeckers raise a number of other arguments to support the claim that the Illinois Consumer Fraud Act should apply.

---

760–61, 109 Ill.Dec. at 94–95, 509 N.E.2d at 755–56. The Stoeckers do not suggest that either of these arguments apply to their contract with Doty. The Stoeckers do suggest, however, that *Potomac Leasing* holds that "transgressions in the negotiation process," like the alleged misrepresentations in the present case, would serve to invalidate a choice of law provision. This is a misreading of *Potomac Leasing*. The reference to "transgressions in the negotiation process" is made in the context of determining when a contract should be set aside as unconscionable. It does not refer to the issue of whether a choice of law provision should be given effect. As noted above, the Stoeckers do not argue that the contract was unconscionable.

We must reject them all. The Stoeckers argue that the court should not impose contract terms which the parties have not included. We agree with this general rule, but it is the Stoeckers who wish to add a term. Where the contract now says "Georgia law shall apply," the Stoeckers wish to add "except that the Illinois Consumer Fraud Act shall also apply."

Second, the Stoeckers argue that Georgia courts have interpreted the Fair Business Practices Act, the Georgia equivalent of the Consumer Fraud Act, to be independent of any action in contract. In addition, the Stoeckers note that Georgia law specifically prohibits sellers from limiting the operation of the Fair Business Practices Act by contract. From these two facts, the Stoeckers conclude that "Georgia law would not be applied by a Georgia court to preempt the Consumer Fraud Act in Illinois." Defendants' Memorandum in Reply at 3. Perhaps this is so, but when we sit in diversity, we sit as an Illinois court, not a Georgia court. As demonstrated above, under its choice of law principles, an Illinois court would give effect to the contract's choice of Georgia law, to the exclusion of the Illinois Consumer Fraud Act.

Third, the Stoeckers argue that the Illinois Consumer Fraud Act should be broadly construed to apply to all deceptive practices in Illinois, including the ones alleged in this action. We recognize that the Illinois courts have held that the Act should be interpreted broadly so as to "eradicat[e] all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers." *Warren v. LeMay*, 142 Ill.App.3d 550, 563, 96 Ill.Dec. 418, 425, 491 N.E.2d 464, 471 (5th Dist. 1986). We also recognize, however, that at least one Illinois court has held that despite the broad reach of the Act, the parties can contract to use another state's law. *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 109 Ill.Dec. 90, 509 N.E.2d 751 (2d Dist.1987). We are unwilling to hold differently. Moreover, as discussed previously, we do not see, nor have the Stoeckers shown us, how the application of Georgia law would defeat the broad public policy concerns of the Illinois Act.

Finally, the Stoeckers attempt to argue that Illinois conflict of law principles mandate the use of Illinois law, rather than Georgia law. While this may or may not be true in the absence of a choice of law provision, our earlier discussion establishes that longstanding Illinois law will give effect to a choice of law provision, unless the chosen law was "dangerous, inconvenient, immoral, [or] contrary to the public policy of [Illinois]." The Stoeckers have not shown that any of these conditions apply, so the Georgia law chosen in the contract must be given effect.

Accordingly, we deny the Stoeckers' motion for leave to file an amended counterclaim. It is so ordered.