**NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts Corporation, Plaintiff,**

v.

**Dennis A. GRAY, Defendant.**

**Civ. A. No. 83CV–6322–AA.**

United States District Court,
E.D. Michigan, S.D.

June 22, 1984.

James E. Brenner, Mark W. McInerney, Fischer, Franklin, Ford, Simon & Hogg, Detroit, Mich., for plaintiff.

Richard C. Elconin, Monroe, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the Court on cross-motions for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons stated

herein, the motion of defendant is granted, and the motion of plaintiff is denied.

## FACTS

The parties have submitted a stipulation of facts in this case. In August of 1978, plaintiff New England Mutual issued a group policy of insurance to North Star Steel Company, which policy provided various insurance benefits to the employees of North Star. The policy was issued and delivered to North Star's corporate headquarters in Minnesota. Defendant Gray was an employee of North Star, who worked at the company's facility in Monroe, Michigan. Mr. Gray received a certificate of insurance from New England Mutual, which was delivered to him in Michigan.

The policy contained two provisions which are of particular importance to these motions. The first page of the policy contained the following statement:

Jurisdiction of issue: State of Minnesota

. . . . .

The Policy is delivered in the Jurisdiction of Issue, and is governed by the laws of that jurisdiction.

The policy also contained a right of subrogation operating in favor of New England Mutual, expressed as follows:

If benefits are paid by the Insurance Company [defined elsewhere as New England Mutual Life Insurance Company] for expenses resulting from injury for which a third party is liable, the Insurance Company shall be entitled to reimbursement from the proceeds of any recovery from such third party, whether by judgment, settlement or otherwise, after the deduction of reasonable and necessary expenditures, including attorneys fees, incurred in effecting such recovery, to the extent of the total amount of benefits paid.

In August of 1982, Gray was involved in a motor vehicle accident, in which he suffered personal injuries requiring medical treatment. He made claims for benefits under the New England Mutual policy, and received over $41,000 for payment of medical expenses.

Gray was also covered by a policy of insurance issued by the Trans-Automotive Insurance Co., which paid certain medical expenses for personal injuries incurred in the operation of a motor vehicle. Trans-Automotive was obligated under Michigan's No Fault Insurance Act, M.C.L.A. 500.3101 *et seq.* to pay these benefits.

Gray has also made additional claims for benefits under the New England Mutual policy totaling over $31,000. When New England Mutual learned that Gray was receiving benefits under the Trans-Automotive policy for the same medical expenses for which New England Mutual had paid benefits, New England Mutual requested that Gray reimburse it under the terms of the subrogation provision reproduced above. When Gray refused, New England Mutual brought this action for declaratory judgment, requesting this Court to declare that New England Mutual is entitled to reimbursement of the benefits which it paid to Gray to the extent that benefits covering the same expenses were paid by Trans-Automotive, that New England Mutual is not obligated to pay Gray's pending claims for $31,775 because benefits for the expenses for which these claims are made have already been paid by Trans-Automotive, and that New England Mutual is entitled to be reimbursed for any future benefits which it pays to Gray to the extent that Gray obtains overlapping benefits from Trans-Automotive or some other source.

## DISCUSSION

Gray has raised two defenses to New England Mutual's claim that it is entitled to reimbursement under the subrogation provision of the insurance policy. First, Gray argues that the subrogation provision, as written, applies only to recovery of damages by the insured against a tortfeasor and does not apply to recovery from a person liable to the insured under a contract. Because the payment of benefits by Trans-Automotive did not constitute a recovery of damages in a tort action, but an amount owing because of a separate con-

tract, and indeed because the No Fault Insurance Act has in this case eliminated tort actions against the party at fault in an automobile accident, Gray reasons that New England Mutual is not entitled to reimbursement from the benefits paid to Gray by Trans-Automotive. Second, Gray argues that New England Mutual's subrogation provision is not enforceable, because New England failed to have the provision approved by the Michigan Commissioner of Insurance, as is required by M.C.L.A. 500.3606(2).[1]

### THE FAILURE OF NEW ENGLAND MUTUAL TO HAVE ITS POLICY APPROVED BY THE MICHIGAN COMMISSIONER OF INSURANCE

Taking Gray's second defense first, the Court concludes that New England Mutual is not entitled to enforce the subrogation provision of the insurance policy because it failed to file a copy of the policy with the Michigan Commissioner of Insurance and obtain his approval of the policy. New England Mutual argues that it was not required to submit the policy for the approval of the Michigan Commissioner, because the policy was not "issued or delivered" in Michigan.

■ The Court holds as a matter of law that when an insurer issues a group disability policy, beneficiaries of which live and are employed in Michigan, and sends a certificate of insurance to the beneficiary/employees in this state, it has "issued or delivered" a policy of insurance in this state, and must therefore comply with the terms of M.C.L.A. 500.3606. The fact that the terms of the policy were negotiated in another state, or that the policy was executed by the parties to the policy in another state, does not vitiate this result.

■ The Court acknowledges New England Mutual's argument that it is burden-some to require an insurer to submit its policies for approval to the administrative agencies of the states in which every beneficiary of the policy is located. Nonetheless, the Court concludes that Michigan has a sufficient interest in the application of its law for the protection of its residents in such a case as this to require that the hardship must be borne by insurers. *Cf. Guardian Life Ins. Co. v. Insurance Commissioner*, 293 Md. 629, 446 A.2d 1140 (1982) (holding that Maryland law controls the operation of a group health insurance policy that covers employees who live and work in Maryland, notwithstanding the fact that the policy was executed in Rhode Island, and contained a provision that the law of Rhode Island would control the operation and effect of the policy).

■ The question then arises, if New England Mutual has failed to submit its group health policy to the Michigan Commissioner for his approval, what is the result of this failure? The statute is silent as to the consequences of such a failure, and there appears to be no case law on the subject. The Court concludes that when the insurer has failed to fulfill its statutory obligation to obtain the approval of the Commissioner of Insurance for a policy that covers employees who live and work in this state, it will be denied the benefits of a subrogation provision contained in the policy. The purpose of the submission and approval requirement of M.C.L.A. 500.3606 is to make certain that the provisions of Chapter 36 of the Insurance Code, dealing with group disability insurance, are complied with and the beneficiaries of such policies are protected against departures from the law. Only by holding the insurer bound to its promises set forth in the policy, but denying it the benefits of its subrogation provision, can the policy underlying § 500.3606 be fulfilled. The Court would

---

**1.** That statute provides in pertinent part as follows:

Sec. 3606. (1) Any insurer authorized to write disability insurance in this state shall have the power to issue group disability insurance policies.

(2) No such group policy may be issued or delivered in this state unless a copy of the form shall have been filed with the commissioner and approved by him.

work an anomalous result by holding the policy to be of no effect whatsoever, and discharging the insurer of its contractual obligation to pay benefits as a result of its failure to comply with statutory requirements, especially after the insurer has received the premiums paid by Gray's employer.

New England Mutual cites the case of *Boseman v. Connecticut General Life Ins. Co.*, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937) for the proposition that when an insurance policy is executed in one state, and the terms of the policy are expressly made subject to the law of that state, the court will refer to the law of that state in the event of a conflict of laws between the laws of that state and the state in which the beneficiary lived and suffered the liability creating accident.

*Boseman* involved a group disability insurance policy issued by the defendant insurer to Gulf Oil Co. The policy was executed in Pennsylvania, and expressly made subject to the laws of that state. The policy contained a provision that all claims for permanent and total disability incurred by a covered employee must be made within 60 days of the termination of employment. The provision was valid under Pennsylvania law. Petitioner Boseman lived and worked in Texas when he suffered the totally disabling injury. Texas law declared that any stipulation in a contract requiring notice as a condition precedent to the right to sue thereon was invalid unless it gave a period of notice of at least 90 days.

The *Boseman* court concluded that Pennsylvania, and not Texas law applied to the insurance policy, and that the petitioner's claims were barred for failure to give timely notice under the terms of the contract. *Boseman* clearly involved a true conflict of laws, inasmuch as application of the Pennsylvania law rendered the notice requirement valid and enforceable, and precluded petitioner's claims, while application of Texas law rendered the notice requirement invalid, and permitted petitioner's claims to go forward.

■ In this case, on the other hand, there is no real conflict between the law of Michigan and the law of Minnesota. Both states require that a policy of group disability insurance be approved by the Commissioner of Insurance in each state. Approval of the policy in Michigan, however, clearly does not preclude approval in Minnesota. In other words, as distinguished from *Boseman*, giving effect to the laws of one state would not defeat effectuation of the laws of the other in this case. New England Mutual could have complied with the submission and approval requirements of Michigan. It did not do so, and as such, is not entitled to have its subrogation provision enforced by the courts of this state.

## FAILURE OF NEW ENGLAND MUTUAL TO CONFORM THE SUBROGATION PROVISION TO APPLICABLE STATUTORY LAW

■ As a second reason for denying operation of the subrogation provision, the Court notes that the effect of that provision as urged by New England Mutual is to deny Gray overlapping benefits under two separate policies of insurance. New England Mutual's construction of the subrogations provision is that it serve as a coordination of benefits provision between co-insurers. Michigan law does not permit insurers to create in their policies a most favored position for themselves vis-a-vis co-insurers. New England Mutual cannot, with this provision, render itself only secondarily liable to all other co-insurers, which is precisely what it seeks to do with its interpretation of this subrogation provision.

■ Michigan has adopted, as part of its comprehensive statutory scheme for the regulation of the insurance industry, the Uniform Disability Insurance Policy Provisions Law (UDIPPL), M.C.L.A. 500.-3400–.3475. Under this framework, insurers who seek to coordinate payment of benefits with co-insurers so as to avoid double recovery by the insured must do so by adopting the coordination of benefits

provisions set forth in M.C.L.A. 500.3438 and 500.3440.[2] These provisions are explicitly made applicable to policies of group disability by M.C.L.A. 500.3610. The subrogation provision in the policy at issue in this case does not even remotely conform to the coordination provisions adopted by the UDIPPL. Failure of the insurer to conform its coordination of benefits provision to those set forth in M.C.L.A. 500.3438 and 500.3440 precludes the insurer from taking advantage of that provision, *Siller*

**2.** The coordination of benefits provisions adopted by the Uniform Disability Insurance Policy Provisions Law, and adopted as M.C.L.A. 500.3438 and 500.3440, provide as follows:

Sec. 3438. There may be a provision as follows:

INSURANCE WITH OTHER INSURERS: If there be other valid coverage, not with this insurer, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which this insurer has not been given written notice prior to the occurrence or commencement of loss, the only liability under any expense incurred coverage of this policy shall be for such proportion of the loss as the amount which would otherwise have been payable hereunder plus the total of the like amounts under all such other valid coverages for the same loss of which this insurer had notice bears to the total like amounts under all valid coverages for such loss, and for the return of such portion of the premiums paid as shall exceed the prorata portion for the amount so determined. For the purpose of applying this provision when other coverage is on a provision of service basis, the "like amount" of such other coverage shall be taken as the amount which the services rendered would have cost in the absence of such coverage.

(If the foregoing policy provision is included in a policy which also contains the policy provision set out in section 3440 there shall be added to the caption of the foregoing provision the phrase "–EXPENSE INCURRED BENEFITS". The insurer may, at its option, include in this provision a definition of "other valid coverage", approved as to form by the commissioner, which definition shall be limited in subject matter to coverage provided by organizations subject to regulation by insurance law or by insurance authorities of this or any other state of the United States or any province of Canada, and by hospital or medical service organizations, and to any other coverage the inclusion of which may be approved by the commissioner. In the absence of such definition such term shall not include group insurance, automobile medical payments insurance, or coverage provided by hospital or medical service organizations or by union welfare plans or employer or employee benefit organizations. For the purpose of applying the foregoing policy provision with respect to any insured, any amount of benefit statute (including any workmen's compensation or employer's liability statute) whether provided by a governmental agency or otherwise shall in all cases be deemed to be "other valid coverage" of which the insurer has had notice. In applying the foregoing policy provision no third party liability coverage shall be included as "other valid coverage".)

Sec. 3440. There may be a provision as follows:

INSURANCE WITH OTHER INSURERS: If there be other valid coverage, not with this insurer, providing benefits for the same loss on other than an expense incurred basis and of which this insurer has not been given written notice prior to the occurrence or commencement of loss, the only liability for such benefits under this policy shall be for such proportion of the indemnities otherwise provided hereunder for such loss as the like indemnities of which the insurer had notice (including the indemnities under this policy) bear to the total amount of all like indemnities for such loss, and for the return of such portion of the premium paid as shall exceed the pro rata portion for the indemnities thus determined. (If the foregoing policy provision is included in a policy which also contains the policy provision set out in section 3438 there shall be added to the caption of the foregoing provision the phrase "–OTHER BENEFITS". The insurer may, at its option, include in this provision a definition of "other valid coverage", approved as to form by the commissioner, which definition shall be limited in subject matter coverage provided by organizations subject to regulation by insurance law or by insurance authorities of this or any other state of the United States or any province of Canada, and to any other coverage the inclusion of which may be approved by the commissioner. In the absence of such definition such term shall not include group insurance, or benefits provided by union welfare plans or by employer or employee benefit organizations. For the purpose of applying the foregoing policy provision with respect to any insured, any amount of benefit provided for such insured pursuant to any compulsory benefit statute (including any workmen's compensation or employer's liability statute) whether provided by a government agency or otherwise shall in all cases be deemed to be "other valid coverage" of which the insurer has had notice. In applying the foregoing policy provision no third party liability coverage shall be included as "other valid coverage".)

*v. Employers of Wausau,* 123 Mich.App. 140, 33 N.W.2d 197 (1983).[3]

■ New England Mutual argues that it should not be bound by the coordination of benefits provision in the Michigan Insurance Code, because the policy is governed by the law of Minnesota and was approved by the Commissioner of Insurance of that state. The Court reiterates its holding that insurers who write group disability policies that cover persons who live and work in this state are subject to the obligations of the Michigan Insurance Code. Further, even assuming that the construction and interpretation of this insurance policy are governed by the laws of Minnesota, Michigan courts will enforce such a policy, valid in Minnesota, only to the extent that its provisions do not contravene the public policy of Michigan, *Lieberthal v. Glens Falls Indemnity Co.,* 316 Mich. 37, 24 N.W.2d 547 (1946). Thus, if Michigan public policy proscribes the enforcement of a coordination of benefits provision that does not conform with those set forth in the Michigan Insurance Code, Michigan courts will not enforce the provision, *cf. Muma v. Financial Guardian, Inc.,* 551 F.Supp. 119 (E.D.Mich.1982) (holding that Michigan courts would not enforce a covenant not to compete, which violates M.C.L.A. 445.761, even though the covenant would have been enforceable in Missouri, where the contract was executed).

## THE SUBROGATION PROVISION DOES NOT APPLY TO BENEFITS PAID BY CO–INSURERS

Gray argues as an alternative ground for denying enforcement of the subrogation provision in this case that the provision by its terms applies only to recovery by the insured of damages against a tortfeasor, and not, as here, where the liability of the third party derives from a contract of insurance. New England Mutual argues that the provision can be fairly construed to include recovery from all sources, including co-insurers, and clearly is not limited by its terms to recovery from tortfeasors.

A careful examination of the subrogation provision suggests that it is designed only to cover claims against the one who causes the injury, the tortfeasor.

■ Stripped of non-essential verbiage for this purpose, the language provides that New England can recover its payments made "for expenses resulting from injury for which a third party is liable" from "proceeds of any recovery from such third party, whether by judgment, settlement or otherwise". The provision speaks of the third party being liable for the injury which is covered by the policy. The clear implication of this language is that the policy term "third party" is intended to be the tortfeasor who causes the injury. When that person pays, by "judgment, settlement or otherwise" the clause applies. But in this case, because of the Michigan No Fault Law, neither the tortfeasor nor his insurance carrier will pay anything for Gray. Payment is made by virtue of a contract of insurance Gray paid for. Trans-Automotive is not "such third party" who is liable for the injury resulting in expenses for which New England contracted to pay. Trans-Automotive is liable, if at all, because of the terms of its contract entered into with Gray. The court concludes that Trans-Automotive's payments are not covered by the terms of the subrogation provision. At best the provision is ambiguous in its application as urged by New England.

---

3. The Court realizes that its holding will result in double recovery by Gray for the injuries he sustained. The Court believes that the most equitable way to resolve this case would be to allocate the costs of furnishing benefits between the two insurers in a manner consistent with the UDIPPL, a result which is not advocated by either of the parties to this case. The *Siller* court has already resolved this issue, however, and concluded that where the insurer has failed to employ the coordination of benefits provision adopted by the UDIPPL, the insurer is not entitled to any contribution whatsoever, and the insured is entitled to double recovery. *Siller* being the expression of the highest court in this state to rule on a matter of state law, it is controlling on this Court in a case arising under this Court's diversity jurisdiction, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

 It is hornbook law that any ambiguities in a policy of insurance that is drafted by the insurer are to be construed against the insurer, *Mays v. Insurance Co. of North America*, 407 Mich. 165, 284 N.W.2d 256 (1979). Insurance contracts must be liberally construed in favor of a policyholder or beneficiary wherever possible, and strictly construed against the insurer, *see Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928); *Mondou v. Lincoln Mutual Casualty Co.*, 283 Mich. 353, 278 N.W. 94 (1938); *see generally* 13 Appleman, *Insurance Law and Practice*, § 7401 (1976). Provisions limiting liability of the insurer, such as exceptions, exclusions, restrictions, and limitations on coverage, are particularly susceptible to the rule of strict construction against the insurer, *see Travelers Indemnity Co. v. Pray*, 204 F.2d 821 (6th Cir.1953).

Double coverage of a particular risk by more than one policy of insurance is a common phenomenon in our society, and has engendered considerable litigation concerning such issues as prorating coverage, ranking insurers for sequential liability and excluding coverage of one policy entirely when alternate coverage exists, *see generally*, 8A Appleman, *Insurance Law and Practice*, §§ 4906–4913 (1976). Problems that arise from double coverage are foreseeable in the insurance business, and should be expressly addressed by the insurer in the policy. Indeed, the Michigan legislature has adopted precise formulations by which an insurer can allocate liability for particular risks between itself and co-insurers, *see* discussion *supra* of UDIPPL. Failure of New England Mutual to specifically address problems arising from co-insurance in its reimbursement provision leads the Court to suspect that New England Mutual did not intend to address this particularly foreseeable source of recovery for the insured. In any event, the foreseeability of co-insurance, coupled with the failure of the New England Mutual to address co-insurance explicitly, at the very least renders the reimbursement provision ambiguous on this score. The Court must

therefore apply the rule of strict construction and conclude that recovery of other insurance benefits by the insured in this case is not an event that is covered by the reimbursement provision.

For the foregoing reasons, Gray's motion for summary judgment is granted, and New England Mutual's motion for summary judgment is denied.

SO ORDERED.