**NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts Corporation, Plaintiff-Appellant,**

v.

**Dennis A. GRAY, Defendant-Appellee.**

No. 84–1678.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 10, 1986.

Decided March 18, 1986.

Mark W. McInerney, Houghton, Potter, Sweeney, & Brenner, Detroit, Mich., for plaintiff-appellant.

Richard C. Elconin, Monroe, Mich., for defendant-appellee.

John D. Pirich, Miller, Canfield, Paddock & Stone, Lansing, Mich., for amicus curiae: Health Ins. Ass'n of America.

Before MERRITT, JONES and NEL-SON, Circuit Judges.

MERRITT, Circuit Judge.

In this diversity case requiring interpretation of Michigan's complex insurance code, plaintiff-appellant New England Mutual Life Insurance Co. appeals the District Court's decision finding Michigan positive law applicable rather than Minnesota law. As a result, the District Court held that a "reimbursement" provision contained in a New England group health insurance policy issued in Minnesota did not allow New England to obtain reimbursement from a beneficiary of the policy who had received payments from two insurers for the same covered expenses. Because we believe that the District Court inappropriately applied Michigan law rather than Minnesota law to this policy, we reverse and remand.

**I.**

On August 1, 1978, New England issued a group health insurance policy covering employees of North Star Steel Co. North Star is headquartered in Minnesota.

The policy states that the "jurisdiction of issue" is the state of Minnesota and provides "THE POLICY IS DELIVERED IN THE Jurisdiction of Issue, and is governed by the laws of that jurisdiction." The policy also contains a "reimbursement" provision that grants New England the right to recover from an insured any proceeds recovered from a third party for injuries for which the third party was liable and for which New England has paid benefits.

Plaintiff-appellee Gray, a Michigan resident, was employed by North Star at its plant in Monroe, Michigan. He was covered by the group policy and had received a "certificate of insurance" in Michigan, but he had not received a copy of the group policy. On August 4, 1982, Gray was injured in a collision between the motorcycle he was driving and another vehicle. He made claims on the group policy for his medical expenses, and New England paid $41,561.20. Trans-Automotive Insurance Co. ("Trans-Auto"), the no-fault insurer of the other vehicle involved in the accident,[1] paid Gray $36,140.40 for the same expenses New England paid on and $31,775.00 for other expenses. Gray has made claims for these other expenses to New England, but New England has refused to pay.

On August 26, 1983, New England sued Gray in the United States District Court

---

1. Trans-Auto paid Gray's medical expenses because, under Michigan's no-fault insurance scheme, motorcycles are not required to be insured, and a no-fault insurer must pay claims of an uninsured motorcycle operator who is injured in a collision with a vehicle covered by the insurer.

for the Eastern District of Michigan, under diversity jurisdiction, seeking reimbursement of $36,140.40 and a declaratory judgment to the effect that New England is not required to pay additional claims for expenses for which Trans-Auto has paid. The parties entered into a stipulation of facts and made cross-motions for summary judgment. The stipulation of facts did not make clear the involvement of Trans-Auto; the stipulation merely stated that Trans-Auto was statutorily obligated to pay.

## II.

On June 22, 1984, Judge Joiner of the District Court for the Eastern District of Michigan entered his opinion denying New England's motion for summary judgment and granting Gray's motion. *New England Mutual Life Insurance Co. v. Gray*, 590 F.Supp. 615 (E.D.Mich.1984). New England appeals this decision, and the Health Insurance Association of America has filed a brief as amicus curiae.

## A.

The District Court ruled that New England could not enforce the reimbursement provision against Gray because New England has not had the policy approved by the Michigan Commissioner of Insurance. Michigan Compiled Laws section 500.3606(2) provides that "[n]o [group disability insurance] policy[2] may be issued or delivered in this state unless a copy of the form shall have been filed with the commissioner and approved by him." *See also* section 500.2242 to the same effect. The New England policy (as distinct from the certificate) was issued and delivered in Minnesota, not in Michigan. However, the District Court held as a matter of law that

"when an insurer issues a group disability policy, beneficiaries of which live and are employed in Michigan, and sends a certificate of insurance to the beneficiary/employees in this state, it has 'issued or delivered' a policy of insurance in this state, and must therefore comply with the terms of M.C.L.A. 500.3606." 590 F.Supp. at 618.

New England points out that the certificate of insurance is distinct and different from the insurance policy under the terms of the policy and argues that the District Court did not follow precedent from the United States Supreme Court and from Michigan courts in reaching its holding on this issue. In *Boseman v. Connecticut General Life Insurance Co.*, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937), the Supreme Court was presented with the argument that delivery of a certificate of insurance in Texas on an insurance policy issued in Pennsylvania made the laws of Texas applicable to the insurance policy. The Court rejected the argument, holding that the certificate was not part of the policy and that its delivery in Texas had no bearing on the question of whether Texas law should apply.[3]

We have discovered no precedent in which a Michigan court has expressly decided whether section 500.3606 applies to out-of-state-issued group policies covering insured employer's Michigan employees. In *Detroit Greyhound Employees Credit Union v. Aetna Life Insurance Co.*, 7 Mich.App. 430, 151 N.W.2d 852 (1967), *rev'd on other grounds*, 381 Mich. 683, 167 N.W.2d 274 (1969), the Michigan Court of Appeals dealt implicitly with this issue. The case involved a group annuity contract issued outside of Michigan and a certificate delivered to a beneficiary in Michigan. The

**2.** Section 500.3606 refers to "group disability insurance policies." New England's group health insurance policy falls within the definition of group disability insurance as found in sections 500.3601, .3400, and .606.

**3.** However, *Boseman* was decided as general federal common law, under *Swift v. Tyson*, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865 (1842), and was contrary to decisions by the courts of Texas. One year after *Boseman*, in *Erie Railroad Co. v.*

*Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Court established the concept that federal courts sitting in diversity actions must apply the substantive common law developed by the courts of the forum state. Thus, *Boseman* is no longer valid general federal common law. *John Hancock Mutual Life Insurance Co. v. Schroeder*, 349 F.2d 406, 407 (5th Cir. 1965); *see also Griffin v. McCoach*, 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941).

court adopted *Boseman* and held that the law to be applied was not that of Michigan. By holding that the law of Michigan did not apply, the court implicitly decided that section 500.3606 (a specific provision of that law) did not apply either.

There may be valid reasons for applying the approval requirement of section 500.-3606 to group disability insurance policies issued outside Michigan when some of the beneficiaries of those policies reside in Michigan. However, the Michigan legislature and courts have not extended the approval requirement to out-of-state-issued policies, and *Detroit Greyhound* implicitly holds that approval of out-of-state policies is not required. Given the well-established requirement that a federal district court apply the substantive law of the forum state in a diversity action, the District Court should have held that section 500.-3606 does not require that New England's policy be approved by the Michigan Commissioner of Insurance. In other words, New England did not, under the facts of this case, "issue or deliver" its group policy in Michigan within the meaning of section 500.3606(2).

**B.**

■ The District Court's second basis for holding that New England was not entitled to reimbursement was that New England had failed to conform its "reimbursement" provision to the coordination of benefits provisions mandated by the Michigan Insurance Code. Judge Joiner observed, we think correctly, that by this suit New England was attempting to use the policy's reimbursement provision to render itself only secondarily liable to all co-insurers. He held that an insurer who seeks to coordinate payment of benefits with co-insurers must do so by adopting the provisions set out in sections 500.3438 and 500.-3440 of the Michigan Insurance Code. These sections specify the provisions that an insurer may use to coordinate benefits, and the New England policy's reimbursement provision does not conform to these sections. The District Court held that New England could not obtain reimbursement, citing *Siller v. Employers of Wausau*, 123 Mich.App. 140, 333 N.W.2d 197 (1983) for the proposition that an insurer whose coordination of benefits provision does not conform to sections 500.3438 and 500.3440 is not entitled to any coordination whatsoever.

The District Court's holding in this respect appears to contradict the implicit holding in *Detroit Greyhound*. Further, sections 500.3438 and 500.3440 do not govern coordination of benefits in New England's policy. The insurance code sections cited by the District Court are in the chapter dealing with *individual* disability insurance policies. Judge Joiner held that these sections were made applicable to New England's *group* policy by section 500.3610. However, unknown to Judge Joiner, two months before the District Court's opinion, section 500.3610 was amended to read, "[E]very policy of group disability insurance shall contain the applicable provisions required in sections 3406 through 3446, *except sections 3438 and 3440.*" (Emphasis shows April 18, 1984 amendment.) [4] Thus, the amendment specifically excludes sections 500.3438 and 500.3440 from incorporation into the Michigan Insurance Code's chapter on group disability policies. Section 500.3610 does not impose the requirements of the coordination of benefits sections on group disability insurance policies.

On appeal Gray takes the position that this amendment to section 500.3610, which was enacted after Gray's accident and his subsequent insurance claims, should not be applied retroactively. If the amendment should be applied prospectively only, Gray would argue that the District Court's holding on incorporation of the coordination of

---

**4.** The District Court's failure to recognize that section 500.3610 had been amended is apparently not unusual. In *Bill v. Northwestern National Life Insurance Co.*, 143 Mich.App. 766, 373 N.W.2d 214 (1985), the Michigan Court of Appeals appears to have disregarded both pre- and postamendment section 500.3610 when it held that section 500.3440 applied to a group disability insurance policy.

benefits sections was correct because the holding concerned preamendment events.[5]

There is, however, no need to rule on the question of retroactive application of this amendment. Before the 1984 amendment, section 500.3610 stated, "[e]very policy of group disability insurance shall contain the applicable provisions required [6] in sections 3406 through 3466." The meaning of this language is that the provisions required in sections 500.3406 through 500.3466 should apply to group disability insurance policies in the same manner as they apply to individual disability policies. The application of the coordination of benefits sections, 500.3438 and 500.3440, to individual disability insurance policies is limited to policies "delivered or issued for delivery to any person in [Michigan]" by section 500.3430. Accordingly, when the preamendment section 500.3610 incorporated the coordination of benefits sections from chapter 34, it also incorporated section 500.3430's limitation that the sections should apply to in-state-issued policies only. Therefore, even if the 1984 amendment to section 500.3610 is applied prospectively only and chapter 34's coordination of benefits sections were incorporated by the preamendment section 500.3610, the coordination of benefits sections cannot apply to the policy involved in this case because this policy was issued and delivered outside the state of Michigan.

Thus, no matter whether the amendment is applied prospectively or retroactively,

sections 500.3438 and 500.3440 do not apply to this out-of-state-issued group disability policy. The District Court was incorrect in ruling that New England could not seek reimbursement because it had failed to conform its policy to the coordination of benefits provisions in sections 500.3438 and 500.3440.

## C.

■ In April 1984, when the Michigan legislature amended section 500.3610 to except sections 500.3438 and 500.3440 (which deal with coordination of benefits) from incorporation into the code chapter dealing with group disability insurance, the legislature enacted new provisions concerning coordination of benefits provisions in group disability policies. One such new enactment is section 500.3610a which provides:

(1) A group disability policy may contain provisions for the coordination of benefits otherwise payable under the policy with benefits payable for the same loss under other group insurance; automobile medical payments insurance; or coverage provided on a group basis by hospital, medical, or dental service organizations, by union welfare plans, or employee or employer benefit organizations.

(2) If a group disability insurance policy contains a coordination of benefits provision, the benefits shall be payable pursuant to the coordination of benefits act.

---

5. Sutherland's Statutory Construction states the majority rule on retroactive application of statutory amendments.

Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment.

N. Singer, Sutherland Statutes and Statutory Construction § 22.36 (4th ed. 1985).

6. New England argues that sections 500.3438 and 500.3440 are not "required" provisions as the term is used in section 500.3610. It points out that chapter 34 contains certain "required provisions"—provisions that all policies must contain, see sections 500.3407 through 500.3424

—and certain "optional provisions"—provisions that policies are not required to contain but that, if present in a policy, must take specified forms, see sections 500.3432 through 500.3454. New England argues that since sections 500.3438 and 500.3440 are "optional" provisions according to chapter 34, they are not "required" within the meaning of section 500.3610. The fact that the Michigan legislature amended section 500.3610 to specifically exclude the sections in question from incorporation by section 500.3610 might indicate that these sections were incorporated by section 500.3610 before the amendment. New England responds that the amendment to section 500.3610 was a clarifying amendment—that the amendment was meant to make clear the meaning of section 500.3610, not to change that meaning. We state no opinion on these issues.

According to subsection one of this new section, New England could insert a coordination of benefits provision into its group policy. Subsection two refers to the Coordination of Benefits Act, another new enactment codified at Mich.Comp.Laws Ann. §§ 550.251–55. However, the Coordination of Benefits Act does not apply to policies issued and delivered outside Michigan. The Act refers to "[a]ny policy or certificate delivered or issued for delivery in this state." Section 550.253(1); see also section 550.253(2), which refers to "such" policies. (The term "certificate" is separately defined in the Act, section 550.252(a), and the certificate received by Gray is not a certificate within this definition.)

Thus, section 500.3610a allows coordination of benefits provisions in group disability policies and dictates that payment of benefits under a group policy containing such a provision is to be governed by the Coordination of Benefits Act, which applies only to Michigan issued policies. In this situation, we hold that section 500.3610a is implicitly limited to policies issued or delivered in Michigan and that neither section 500.3610a nor the Coordination of Benefits Act applies to New England's group policy because it was issued in Minnesota.

The Michigan legislature presumably could, if it desired, make Michigan's insurance code applicable to group insurance policies issued in other states, at least in so far as the policies have an impact on Michigan beneficiaries. New England represents that the states of Kansas and West Virginia have done so. However, it appears that no provision of the Michigan Insurance Code dictates whether, under the out-of-state-issued group policy, New England may seek reimbursement of the funds paid by Trans-Auto.

### III.

We next turn to the issue of whether a court applying Michigan conflict of law rules should enforce the parties' agreement that the law of Minnesota would govern their insurance contract. The applicable conflict of law rule is found in *Detroit Greyhound:*

'The substantive provisions of a contract, valid by the law of the State where the contract is made and is to be performed, create a right of property enforceable in another jurisdiction provided it is not contrary to the public policy of the forum.'

7 Mich.App. at 439, 151 N.W.2d at 857 (quoting *Annis v. Pilkewitz,* 287 Mich. 68, 77, 282 N.W. 905, 908 (1938)).

Thus, the determinative point under this issue is whether applying Minnesota law in accordance with the parties' choice of law provision in the contract, and thereby potentially allowing New England to be reimbursed, would be contrary to the public policy of Michigan. As discussed above, the Michigan Insurance Code does not dictate a result on the coordination of benefits question. This being the case, it cannot be said that Michigan statutory law embodies a statement of public policy that would be violated by enforcing the reimbursement provision as interpreted under Minnesota law, which was chosen by the parties to the insurance contract. We have discovered no case law stating a public policy against enforcing a contractual provision dealing with choice of law or with reimbursement or coordination of benefits in the insurance context. In both *Detroit Greyhound* and *Annis v. Pilkewitz,* 287 Mich. 68, 282 N.W. 905 (1938), Michigan courts held that the law of another state governed contractual provisions made subject to that law. In short, no statement of Michigan public policy would be violated by enforcing the reimbursement provision as dictated by Minnesota law.

### IV.

The District Court's decision to grant Gray's motion for summary judgment is reversed. According to applicable Michigan law and choice of law rules, this case should be resolved under Minnesota law. We therefore remand to the District Court with instructions to apply Minnesota law in interpreting the reimbursement provision

and enforcing it if appropriate. This result is dictated by Michigan conflicts of law rules and has the additional advantages of promoting uniformity of interpretation of this insurance policy by all beneficiaries and of avoiding overlapping regulation of interstate business by more than one state.

## V.

We must also address the District Court's final holding. The District Court ruled that the New England group policy's reimbursement provision did not allow New England to be reimbursed for benefits paid by another insurance company. The reimbursement provision states:

RIGHT OF REIMBURSEMENT—If New England Life pays benefits for expenses resulting from an injury for which a third party is liable, and recovery is made from the third party, New England Life is entitled to reimbursement from the proceeds of the recovery to the extent of the total benefits paid. This right of reimbursement applies to the full amount recovered, whether by judgment, settlement or otherwise, after the deduction of any reasonable and necessary expenditures (including attorney's fees) incurred in effecting the recovery.

Judge Joiner emphasized that the provision speaks of "injury for which a third party is *liable*" and recovery by *judgment or settlement.* (Emphasis added.) The District Court interpreted the reimbursement provision as applying only to reimbursement by Gray of funds recovered from a tortfeasor, and, ruling that Trans-Auto was not such a "third party," the District Court held that New England should not be reimbursed. Alternatively, the District Court held that the reimbursement provision was ambiguous and should, therefore, be construed against its drafter, New England.

It should be noted that because of the ambiguity in the stipulation of facts, Judge Joiner thought that Trans-Auto was Gray's no-fault insurer. The judge might have reached a different result on this issue had he known that Trans-Auto was not Gray's

insurer: it was the insurer of the other driver involved in the accident. The District Court's opinion states:

The provision speaks of the third party being liable for the injury which was covered by the policy. The clear implication of this language is that the policy term "third party" is intended to be the tortfeasor who causes the injury. When that person pays, by "judgment, settlement or otherwise" the clause applies. But in this case, because of the Michigan No Fault Law, neither the tortfeasor nor his insurance carrier will pay anything for Gray. Payment is made by virtue of a contract of insurance Gray paid for. Trans-Automotive is not "such third party" who is liable for the injury resulting in expenses for which New England contracted to pay. Trans-Automotive is liable, if at all, because of the terms of its contract entered into with Gray.

590 F.Supp. at 521. Additionally, the policy does contain a separate coordination of benefits provision applicable to co-insurance by another group insurer. This fact might be deemed to support the conclusion that the reimbursement provision was intended to apply only to funds received from tortfeasors.

New England argues that the reimbursement provision's term "third party" means any person or entity who was not a party to the insurance contract—any party other than New England and North Star. Further, New England argues that the concept of construing an ambiguous provision against its drafter should not be applied in the group insurance situation where the bargaining positions of the parties to the contract are not greatly disparate.

It appears to us that, unless Minnesota law dictates a contrary result, Judge Joiner reached the proper result on this issue. The reimbursement provision applies only to funds paid by a third party who is liable for the injury. Trans-Auto paid the benefits because Michigan's no-fault scheme required payment, not because Trans-Auto

was "liable." We would emphasize, however, that Minnesota law should govern interpretation of the reimbursement provision and that we have not examined Minnesota law. For this reason, we decline to state a holding on Judge Joiner's interpretation of the reimbursement provision until the parties and the District Court have had an opportunity to analyze applicable Minnesota law.

Accordingly, the judgment of the District Court is reversed and the case remanded for further proceedings as required by this opinion.