JEAN K. JAKUBIK, n/k/a Torchy Chirafisi, Plaintiff-Appellee, v. JAMES C. JAKUBIK, Defendant-Appellant.

Second District No. 2—90—0272

Opinion filed January 24, 1991.—Rehearing denied March 6, 1991.

James C. Jakubik, of Libertyville, appellant *pro se*.

Richard F. Lanciloti, of Roselle, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, James C. Jakubik, appeals the entry of a garnishment judgment order by the circuit court of Du Page County garnishing his individual retirement account (IRA) with Fidelity Management Trust Company (Fidelity), which is located in Massachusetts. Richard F. Lanciloti (wife's attorney) represented defendant's ex-wife, Jean K. Jakubik, n/k/a Torchy Chirafisi, in a post-dissolution proceeding to obtain an order increasing plaintiff's child support and for the payment of future college education costs. The court awarded attorney fees, the amount of which is not appealed, directly to wife's attorney in connection with those proceedings. Wife's attorney obtained a non-wage garnishment of husband's IRA account and a turnover order to enforce that award. On subsequent motions to reconsider and to vacate the turnover order (garnishment judgment), defendant asserted section 12—1006 of the Illinois Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 12—1006), which exempts the IRAs from judgment. The court rejected defendant's argument, holding that Illinois' strong public policy favoring collection of child support and maintenance obligations created an exception to the property exemption statute for attorney fees incurred in collection of support obligations. We reverse.

This court first addresses the choice-of-law question raised by wife's attorney, which we find not well taken.

Fidelity, the custodian of defendant's IRA, is located in Massachusetts. Fidelity's custodial agreement included a choice-of-law provision stating that Massachusetts law would control. Thus, wife's attorney asserts that Massachusetts law, which does not contain a property exemption for IRAs, governs the execution of judgment by garnishment of defendant's IRA in this instance.

■■ ■ Generally, contract choice-of-law questions are dictated by the terms of the contract itself, and a court will not disturb the parties' choice of what law will govern disputes arising between them under their contract. (*Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522.) However, wife's attorney was not a party to the contract he asserts as a basis for applying Massachusetts law. Therefore, wife's attorney was neither bound by its terms, nor can he invoke its terms as a bar to the application of Illinois law. *Iser Electric Co. v. Ingran Construction Co.* (1977), 48 Ill. App. 3d 110, 113.

*Spindle v. Schreve* (1884), 111 U.S. 542, 28 L. Ed. 512, 4 S. Ct. 522, cited by wife's attorney, is not controlling in that it addresses the validity of a trust containing a provision in restraint of alienation, not the application of an exemption from judgment. (111 U.S. at 547-48,

28 L. Ed. at 513-14, 4 S. Ct. at 524-25.) The Court further found the bankruptcy trustee's attempt to reach the property to satisfy creditors moot, either by the nonalienation provision itself or by a prior blanket conveyance of all the bankrupt's assets if the provision was, in fact, invalid. Thus, it was unnecessary to resolve the choice-of-law issue raised by the trustee. 111 U.S. at 548, 28 L. Ed. at 514, 4 S. Ct. at 525.

█ It was the court's exercise of its powers to enforce its own order, which arose from the underlying marriage contract between defendant and his former spouse, and its eventual dissolution, that framed the issue for choice-of-law determination. Thus, Illinois law applies because the parties have invoked the statutory power of the Illinois courts to grant dissolution. (*Morrow v. Morrow* (1957), 15 Ill. App. 2d 109.) Further, Illinois applies the most significant contacts rule in contract actions where the parties have neglected to make an effective choice of law. (See *Illinois Tool Works, Inc. v. Sierracin Corp.* (1985), 134 Ill. App. 3d 63, 69.) Thus, Illinois as the parties' domicile and where the contract was both executed and to be performed has the most significant contacts to this action. See *Illinois Tool Works*, 134 Ill. App. 3d at 69, citing *Champagnie v. W.E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136.

Having determined that Illinois law applies, section 12—1006 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 12—1006) exempts defendant's IRA from judgment, subject to statutory exceptions. Child support and maintenance obligations are subject to such a statutory exception. Generally, however, attorney fees enjoy no exception to the exemption statutes. Wife's attorney argues that fees generated during a proceeding that concerns the support obligation assume the same quality as the support obligation and, therefore, enjoy the same benefit of statutory exception from the property exemption statutes as child support and maintenance obligations.

Initially, we note that *Bobowski v. Bobowski* (1909), 242 Ill. 524, cited by wife's attorney, is not controlling. In *Bobowski*, the court was expressly authorized by statute to dispose of a spouse's homestead exemption at the time of the divorce settlement. (*Bobowski*, 242 Ill. at 530.) The supreme court found that the creation of lien at the time of the divorce upon the real property of the husband for alimony and attorney fees was an implicit disposal of the husband's homestead exemption for that property. Thus, at the time the judgment was executed against the real property, no exemption existed. In contrast in this instance, defendant's property exemption for his IRA remained intact at the time of the garnishment judgment.

■ Because wife's attorney asserts that attorney fees incurred in obtaining a modification of child support obligations enjoy the same exception from the property exemption statutes as child support and maintenance obligations, our inquiry begins with the language of the statutes that are the basis of the support obligation exception. The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature in interpreting the language of a statute. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) Clear language must be given effect without resort to extrinsic aids. *People v. Boykin* (1983), 94 Ill. 2d 138, 141.

■ The withholding provisions for child support and maintenance of both section 706.1 of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1983, ch. 40, par. 706.1) and section 1107.1 of the Non-Support of Spouse and Children Act (the Non-Support Act) (Ill. Rev. Stat. 1983, ch. 40, par. 1107.1) expressly take precedence over contrary laws. "Any other State or local laws which limit or exempt income [available to pay child support or maintenance] shall not apply." (Ill. Rev. Stat. 1983, ch. 40, par. 706.1(A)(4)(e); ch. 40, par. 1107.1(4)(e).) So, too, both allow withholding of income "regardless of source" for the purpose of securing support obligations. (Ill. Rev. Stat. 1983, ch. 40, par. 706.1(A); ch. 40, par. 1107.1.) Thus, the express language of the Dissolution Act and the Non-Support Act unequivocally creates an exception to the personal property exemption statutes for child support and maintenance obligations without mention of attorney fees.

■ Further, the withholding provision of the Non-Support Act is clearly addressed to a spouse who has refused to recognize his responsibility to support his family. (Ill. Rev. Stat. 1983, ch. 40, par. 1101.) So, too, the original withholding provision of the Dissolution Act was originally limited to only delinquent obligors. (Ill. Rev. Stat. 1983, ch. 40, par. 706.1(B).) The Dissolution Act's revision, effective in 1989, allowed an order of withholding to be entered immediately upon the initial order of support only if no agreement between the spouses that adequately assured payment of the support obligation had been reached. (Ill. Rev. Stat. 1989, ch. 40, par. 706.1(B).) However, even as revised, it is clear that an order of withholding is only required when an obligor has been or is delinquent, and an order of withholding remains within the discretion of the court when support obligations are being timely met. Thus, the focus of the withholding provisions of both the Non-Support Act and the Dissolution Act is the delinquent obligor and not a spouse who is timely meeting his or her support obligations. Here the obligations that were the basis for attorney fees were future obligations.

In granting wife's attorney his fees, it was the incurring of attorney fees in connection with *collection* of support obligation that swayed the trial court: "The court in finding at this time that based on *Bobowski*, that public policy reasons would require that the exemption provided for in the statute would not extend to fees which were reduced to judgment for the collection of child support." Thus, the court, too, focused on the delinquent status of the obligor. However, the facts in this instance are that the fees were generated not in collection of past-due child support, but rather to modify and enlarge defendant's future obligation.

■ The cases cited by wife's attorney interpreting the language of the Dissolution Act and the Non-Support Act offer no basis upon which this court may extend the exception to permit garnishment of an IRA to satisfy a judgment for attorney fees. In both *Logston* and *In re Support of Matt* (1985), 105 Ill. 2d 330, the exempt property was taken to satisfy unpaid support obligations. (See, *Logston*, 103 Ill. 2d at 283-84 (exempt status of income no defense to contempt proceeding for failure to pay support obligation); *In re Support of Matt* (1985), 105 Ill. 2d 330 (exempt status of spendthrift trust income did not prevent the garnishment of the income, but not principal, from the trust to pay past-due child support).) Thus, the language of both the Dissolution Act and the Non-Support Act contains no clear indication of a legislative intent to create an exception to property exemption statutes for attorney fees generated in connection with support obligations. Rather, the language of the Dissolution Act and Non-Support Act is that only support obligations enjoy the exception from property exemption.

■ Wife's attorney argues the public policy that supports the Dissolution Act and the Non-Support Act warrants the extension of the exception he seeks. Wife's attorney correctly summarized the public policy that underpins both the provisions of the Dissolution Act and the Non-Support Act, which is to ensure that support judgments are enforced by all available means. (*People ex rel. Sheppard v. Money* (1988), 124 Ill. 2d 265, 271.) Our supreme court has recognized a "national child support crisis." (*Sheppard*, 124 Ill. 2d at 270.) The withholding provisions of the Dissolution Act and the Non-Support Act "fulfill[] an important social need in terms of declaring an obligation of support and improving Illinois' method of enforcement" through a more disciplined and uniform approach. *Sheppard*, 124 Ill. 2d at 272.

■ However, the public policy that supports the various personal property exemption statutes is identical to that which is the basis of the Dissolution Act and the Non-Support Act. The property exemp-

tions allow a debtor to retain sufficient assets so that he or she may continue to meet family obligations of support, thereby avoiding the public expense of assuming such obligations. *Logston,* 103 Ill. 2d at 279.

■ Wife's attorney argues that, absent the ability to collect awarded fees, a spouse will be unable to obtain representation to protect his or her rights. However, wife's attorney is free to enforce his judgment against other of defendant's nonexempt assets, as may any other judgment creditor. Illinois' public policy favors the payment of child support and maintenance obligations from exempt property to promote the support of the family, not the support of attorneys. Indeed, payment of attorney fees from sources held exempt for family obligations could deplete such resources so as to leave no assets available to satisfy the support obligation itself. The attorney fees as an extension of the exception would thus defeat the support obligation that is the very essence of the exception. The long and well-established public policy enunciated in the Dissolution Act and the Non-Support Act, as well as the property exemption statutes, is to maintain assets for family support. That policy would be subverted, not promoted, if exception to the personal property exemptions was extended to attorney fees.

Having decided that the court erred in allowing garnishment of defendant's IRA in execution of a judgment for attorney fees, we now turn to wife's attorney's liability for improper garnishment of exempt property. Section 12–1005 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 12–1005) imposes civil liability of double the value of the exempt property improperly taken. Wife's attorney argues that section 12–1005 is inapplicable because his conduct was taken in good faith based upon the published law, and also a good-faith argument for the extension, modification, or reversal of existing law.

■ Section 12–1005 does not contain a requirement of unreasonable conduct or bad faith. Although an available remedy for nearly 100 years, little case law exists interpreting it and none in the last 50 years. However, the purpose of section 12–1005 is punitive. (See, e.g., *Johnson v. Larcade* (1903), 110 Ill. App. 611, 618.) It imposes a penalty of double the value of property improperly seized upon an officer who fails to ascertain the exempt status of such property. (Ill. Rev. Stat. 1983, ch. 110, par. 12–1005; *Johnson,* 110 Ill. App. at 618.) Thus, section 12–1005 is analogous in purpose to section 2–611, which imposes the penalty of an opponent's attorney fees upon an attorney who fails adequately to investigate a claim prior to bringing suit. (See Ill. Rev. Stat. 1983, ch. 110, par. 2–611.) Therefore, by

further analogy, the good-faith or honest-mistake defense to a section 2—611 claim should also be extended to a claim for a penalty under section 2—1005. See *Peoples Gas Light & Coke Co. v. Black Steer Provision Co.* (1985), 131 Ill. App. 3d 387.

 Although section 12—1006 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 12—1006) exempting defendant's IRA from judgment was effective August 30, 1989, it was not published until October 1989, one month after the garnishment proceeding. Section 12—1006 contains a special effective date, some 10 months earlier than that which would normally occur. Wife's attorney's conduct was based on the law as was available to him at the time he instituted garnishment proceedings against the defendant's IRA. We find that because of the peculiar timing of the action taken in this case, wife's attorney acted reasonably and in good faith, and section 12—1005 does not impose liability upon wife's attorney of double the value of the exempt property improperly taken.

The judgment of the circuit court garnishing defendant's IRA is reversed, and the cause is remanded for further proceedings not inconsistent with this decision.

Reversed and remanded.

INGLIS and BOWMAN, JJ., concur.