Fourth Division
 May 8,1997









Nos. 1-96-0146, 1-96-2466, 1-96-3186 Cons.

MAREMONT CORPORATION, ) APPEAL FROM THE
 ) CIRCUIT COURT OF
 Plaintiff-Appellant, ) COOK COUNTY.
 )
 v. )
 )
EDWARD WILLIAM CHESHIRE, Individually )
On His Own Behalf, and As Representative)
Underwriter On Behalf of CERTAIN UNDER- )
WRITERS AT LLOYD'S OF LONDON and CERTAIN)
LONDON MARKET COMPANIES, AMERICAN )
MOTORISTS INSURANCE COMPANY, CONTINENTAL)
CASUALTY COMPANY, LIBERTY MUTUAL )
INSURANCE COMPANY, ) HONORABLE
 ) ARTHUR DUNNE,
 Defendants-Appellees. ) JUDGE PRESIDING. 
 
 
 PRESIDING JUSTICE WOLFSON delivered the opinion of the 

court:

 In this insurance coverage case the trial court first had to
determine which state's law governs the parties' rights and
obligations. The answer to that question determines whether the
insurance companies had to reimburse Maremont Corporation
(Maremont) for money it spent settling a lawsuit filed by a
corporation that owned a South Carolina site allegedly polluted
by Maremont.
 The trial court drew the issue: if South Carolina law
controls, the insurance companies do not have to reimburse
Maremont. If Illinois law controls, they do. 
 The trial court applied South Carolina law. All claims for 
reimbursement for settlement costs concerning the South Carolina 
site were dismissed by way of summary judgment. Because we
conclude that Illinois law should have been applied, we reverse
and remand.
FACTS
 The facts that apply to the defendants' summary judgment
motions are not disputed. The case before us concerns Maremont's
claims against four of its insurance companies in connection with
a single site in South Carolina. We set out those facts
necessary to a resolution of Maremont's appeal. Because the case
involves summary judgment based on a choice of law issue, our
review is de novo. Malatesta v. Mitsubishi Aircraft
International, Inc., 275 Ill. App. 3d 370, 384, 655 N.E.2d 1093
(1995).
 Maremont manufactures automotive parts. It was founded in
Chicago, Illinois in 1877. Maremont is now a Delaware
corporation that conducts its business out of Chicago.
 The defendants are Edward William Cheshire (Cheshire),
American Motorists Insurance Company (AMICO), Continental
Insurance Company (Continental), and Liberty Mutual Insurance
Company (Liberty Mutual). 
 Cheshire, AMICO, and Continental provided Maremont with
standard excess policies. Liberty Mutual issued comprehensive
general liability policies to Maremont.
 The Cheshire policy promised to indemnify Maremont for:
 "all sums which the Assured shall be obligated to pay
 by reason of the liability *** for damages, direct or
 consequential and expenses, all as more fully defined
 by the term 'ultimate net loss' on account of ***
 Property Damage *** caused by or arising out of each
 occurrence happening anywhere in the world." 
 The Cheshire policy defined "ultimate net loss" as "the
total sum which the Assured *** become[s] obligated to pay by the
reason of *** property damage *** either through adjudication or
compromise and shall also include *** all sums paid *** for
litigation, settlement, adjustment and investigation of claims
and suits which are paid as a consequence of any occurrence ***."
 The other policies contained similar language.
 Maremont purchased policies from Cheshire that provided
coverage between 1962 and 1968. When Maremont bought the
policies, Cheshire conducted business in Illinois. At that time,
Maremont was an Illinois corporation. Chicago was Maremont's
principal place of business. The policies were negotiated in
Chicago. Notice was to be given to Cheshire's agent in Illinois. 
The policies covered risks in several states, including Illinois.
 Maremont's policies with Continental provided coverage from
1959-1962, 1966-1975, and 1976-1980. Continental is an Illinois
corporation. Its principal place of business is Illinois. 
Maremont negotiated and purchased these policies in Chicago. The
policies were issued in Chicago. Notice was to be given in
Illinois. The Continental polices covered risks in several
states, including Illinois.
 The AMICO policy covered the period from 1975 to 1976. 
AMICO is an Illinois corporation with offices in Illinois. The
policy was negotiated and procured in Chicago. It was issued in
Chicago. Notice was to be given to AMICO in Illinois. The
policy covered risks in several states.
 Liberty Mutual's comprehensive general liability policies
covered the years 1956-1962. The policies were issued to Saco-
Lowell Shops, Inc. Saco-Lowell was a corporation based in
Massachusetts. Maremont obtained a controlling interest in Saco-
Lowell in 1960. Liberty Mutual is a Massachusetts company. 
Liberty Mutual does business in Illinois. Out of all the polices
Maremont claims Liberty Mutual issued it, only one is available,
covering the period from 1960-1961.
 None of the policies contains an express choice of law
provision.
 Maremont brought a declaratory judgment action against its
insurers. Maremont sought defense costs and indemnification of
costs arising out of six environmental claims against Maremont in
five states--South Carolina, California, Oklahoma, Massachusetts,
and Indiana. One of the claims concerned a site in Easley, South
Carolina (Easley Site). Platt Saco Lowell Corporation (PSL)
owned the manufacturing facility on the site. The facility had
been formerly operated by Maremont. Maremont had sold the Easley
Site to the corporate predecessor of PSL in 1973. 
 In 1978, a South Carolina agency discovered environmental
contamination at the Easley site. PSL was required by South
Carolina to clean up the cite. In 1991, PSL filed a suit against
Maremont in the United States District Court for the District of
South Carolina, claiming that Maremont had caused property damage
to the site. It claimed that the site's surface water, ground
water, and soil had been contaminated by Maremont's disposal of
solid and hazardous wastes at the site. 
 Maremont settled the claim with PSL. Among other things,
the settlement agreement provided:
 "Eighth: This Release is made and entered into for
 the sole protection and benefit of the parties hereto,
 and no other person, persons, entity or entities shall
 have any rights of action hereon, right to claim any
 right or benefit from the provisions hereof, or be
 deemed to be a third party beneficiary hereof." 
 and
 "Thirteenth: This Release shall be governed by and
 construed and enforced in accordance with the laws of
 South Carolina. The language of all parts of this
 Release shall in all cases be construed as a whole,
 according to its fair meaning, and not strictly for or
 against either of the parties hereto."
 Cheshire, individually and as a representative of Certain
Underwriters at Lloyd's of London, sought partial summary
judgment concerning its responsibility to reimburse Maremont for
costs incurred at the Easley Site. It argued that South Carolina
law applied to its insurance policy. Under South Carolina law,
claimed Cheshire, the costs incurred by Maremont at Easley were
not "damages" covered by the Cheshire policies.
 The trial court granted Cheshire's motion. The other
defendants -- AMICO, Continental, and Liberty Mutual -- then were
allowed to join Cheshire's motion for partial summary judgment. 
The trial court granted the defendants' motions. All of the
trial court's orders contained Rule 304(a) language finding there
was no just reason to delay their enforcement or appeal. This
appeal concerns only the Easley Site.
DECISION
 The trial court assumed Maremont was seeking reimbursement 
for equitable damages. It then concluded that under South
Carolina law comprehensive general liability insurance policies
covered only legal damages. Once the trial court decided that
South Carolina law applied, the case concerning the Easley site
was over. Maremont contended that the settlement it made with
PSL included legal, as well as equitable, damages. Because we
conclude the trial court should have applied Illinois law, there
is no need to analyze the dollar nature of the South Carolina
settlement.
 The parties seem to agree that if Illinois law were to apply
in this case the insurance companies would have to provide
coverage. Illinois law does not distinguish between legal and
equitable damages when determining coverage under a comprehensive
general liability policy. Outboard Marine Corp. v. Liberty
Mutual Insurance Co., 154 Ill. 2d 90, 116, 607 N.E.2d 1204
(1992).
 In the trial court, and here, Maremont relied on
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co., 166
Ill. 2d 520, 655 N.E.2d 842 (1995), another insurance coverage
case dealing with environmental contamination. There, the
all-risk policy covered six different states. The policy was
delivered in Illinois. Lapham-Hickey is an Illinois corporation. 
Protection is licensed to do business in Illinois. The only
connection Minnesota had to the lawsuit was that the polluted
site was located there. The policy was silent on choice of law
for resolving coverage disputes, although it did contain two very
specific and limited situations where the location of the 
property would determine the law to be applied. 
 Generally, the Supreme Court held, insurance policy
provisions are "governed by the location of the subject matter,
the place of delivery of the contract, the domicile of the
insured or of the insurer, the place of the last act to give rise
to a valid contract, the place of performance, or other place
bearing a rational relationship to the general contract."
Lapham-Hickey, 166 Ill. 2d at 526-27, quoting Hofeld v.
Nationwide Life Insurance Co., 59 Ill. 2d 522, 528, 322 N.E.2d
454 (1975). 
 The Lapham-Hickey and Hofeld choice of law tests for
insurance contracts are broader than the site-focused approach
taken in The Restatement (Second) of Conflict of Laws, relied on
by the insurance companies in this case. (See Restatement, sec.
193.) In fact, the Supreme Court in Lapham-Hickey never
mentioned the Restatement. 
 In Lapham-Hickey, the court held Illinois law applied to 
the policy:
 "Therefore, to obtain a consistent interpretation
 of the policy and to reasonably apply Illinois choice
 of law principles, Illinois law must govern the
 interpretation of this policy." Lapham-Hickey, 166 Ill.
 2d at 527.
 The factual similarities between Lapham-Hickey and this 
case are striking. The policies here cover sites in five states.
At the time Maremont entered into or acquired these insurance
contracts it was an Illinois Corporation. At all times, Illinois
was Maremont's place of business. Continental and AMICO are
Illinois corporations doing business in Illinois. Cheshire and
Liberty Mutual are licensed to do business in Illinois. All
policies with the possible exception of those of Liberty Mutual
were negotiated, purchased, and delivered in Illinois. Other
than being the location of the polluted site, South Carolina had
nothing to do with the negotiating, purchasing, delivering or
performing of the insurance policies.
 These policies say nothing about which state's law will
determine coverage, but throughout the policies we find
references to state law provisions in certain limited
circumstances.
 Faced with Lapham-Hickey, the trial judge focused on one
factor that did not exist in the Supreme Court decision--the
South Carolina settlement agreement. It is clear to us that the
trial judge relied on the settlement between Maremont and PSL. 
He said so, several times.
 On December 5, 1995: 
 "And in the Court's opinion [the settlement
 agreement] controls the issue which is before the
 Court***the choice of law issue*** And, accordingly,
 I find that the choice of law is and has been exercised
 by the parties to this release, one of whom was the
 insured's corporation. And they have, in fact, selected
 South Carolina to be the site wherein the law applies."
 And on December 14, l995:
 "My ruling was based upon the settlement agreement
 between the corporation insured and the successor
 corporation***Clearly my ruling was predicated on that
 settlement agreement."
 On June 10, 1996:
 "The only thing the Court is saying is that the
 choice of law is that the Maremont Corporation is bound
 by the choice of law made in their contract between
 Maremont and its successor in interest."
 The trial court cited no precedent that would allow it to
base a choice of law decision on a settlement agreement between
the insured and a third party. We are aware of none. In fact,
we have said third parties cannot take advantage of the choice of
law provisions in contracts they did not sign.
 In Jakubik v. Jakubik, 208 Ill. App. 3d 119, 566 N.E.2d
808 (1991), the wife's attorney wanted to adopt the choice of law
provision described in the husband's retirement account agreement
with a trust company so that he could collect his fee from the
husband's IRA. The court held the "wife's attorney was neither
bound by its terms, nor can he invoke its terms as a bar to the
application of Illinois law." Jakubik, 208 Ill. App. 3d at 122.
 Any reasonable reading of the settlement agreement in this
case leads to the conclusion that the release never was intended
to apply to third parties. Paragraph eight needs no
interpretation:
 "This release is made and entered into for the
 sole protection and benefit of the parties hereto, and
 no other person, persons, or entity or entities shall
 have any rights of action hereon, right to claim any
 right or benefit from the provisions hereof, or be
 deemed to be a third party beneficiary hereof."
 Clearly, Maremont and PSL intended that the settlement
provisions were to benefit no one but Maremont and PSL. The 
trial court brushed off paragraph eight because he concluded the
insurance companies did not receive adequate notice of the
settlement. Whether they did is not clear in the record. In
fact, it appears that all companies other than Liberty Mutual did
have notice. At any rate, we do not see why lack of notice to
the companies would matter. We believe the trial court erred
when it held that the settlement agreement in South Carolina
controlled the choice of law in this case.
 We see no reason for further litigation of the choice of law
issue. Lapham-Hickey compels us to hold that Illinois law
applies to this dispute. In that way, the parties can "obtain a
consistent interpretation" of the policies. Lapham-Hickey, 166
Ill. 2d at 527. A contrary result would open these policies to
five different views of the law, depending on the site of the
risk. That would not be good policy or good law.
 While the facts applicable to Liberty Mutual's policies are
not as compelling, we see no basis in the record to treat that
company any differently.
 CONCLUSION
 We therefore reverse the trial court's order granting
summary judgment to the insurance companies and remand this cause
for proceedings consistent with this opinion.
 REVERSED AND REMANDED.
 McNAMARA and CERDA, JJ., concur.