# Illinois Official Reports

## Appellate Court

---

### *PNC Bank, N.A. v. Hoffmann*, 2015 IL App (2d) 141172

---

| | |
|---|---|
| Appellate Court Caption | PNC BANK, N.A., Plaintiff-Appellee, v. CAMILLE O. HOFFMANN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-14-1172 |
| Filed | July 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-L-913; the Hon. Dorothy French Mallen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David C. Gustman, Jill C. Anderson, and Devon J. Eggert, all of Freeborn & Peters LLP, of Chicago, for appellant.<br><br>James M. Crowley, John F. Sullivan, and Christina M. Ripley, all of Crowley & Lamb, P.C., of Chicago, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, PNC Bank, N.A. (PNC), brought suit against defendant, Camille O. Hoffmann, as guarantor of a multimillion-dollar loan. On December 11, 2013, the trial court entered judgment in PNC's favor for $10,613,320.14. PNC thereafter issued citations to discover assets on several parties, including Raymond James & Associates, Inc. (Raymond James), where Hoffmann had an individual retirement account (IRA). Hoffmann sought to declare the retirement account exempt, and PNC initially took the position that she had not met her burden of proof for the exemption. Several weeks later, PNC agreed that the IRA was exempt. Hoffmann then sought damages under section 12-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/12-1005 (West 2012)), which allows for damages when a judgment creditor seizes exempt property. The trial court denied damages, ruling that there had been no seizure under the statute, and Hoffmann appeals this ruling. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    On April 24, 2014, PNC issued a citation to discover assets to West Suburban Bankcorp., Inc. (WSB). According to Hoffmann, her Raymond James IRA contained WSB stock, so when PNC issued the citation to WSB, her IRA was frozen. On July 3, 2014, Hoffmann filed a motion to declare the IRA exempt. She alleged that the IRA was established on June 2, 2010, before PNC filed suit, and thus the IRA was exempt from seizure under section 12-1006 of the Code (735 ILCS 5/12-1006 (West 2012)). She stated that she was also reserving the right to request damages from PNC under section 12-1005.

¶ 4    On July 8, 2014, PNC issued a citation to discover assets to Raymond James.

¶ 5    The trial court held a hearing on Hoffmann's exemption motion on July 15, 2014. PNC's counsel stated that the IRA had about 2,158 shares of WSB stock, worth about $800,000, and additional cash. He stated that the IRA would be exempt if it complied with the Internal Revenue Code but that determining this would require looking at when it was established, how it was funded, and whether there were contributions and distributions. The trial court asked if he was saying that he would have no problem with a temporary order declaring the IRA exempt, but with leave for further discovery. PNC's counsel said that he was actually going to ask for a temporary order freezing the IRA, pending a final determination as to the exemption status. PNC's counsel stated that he had requested documents bearing on the good-faith intent as to both the establishment and the administration of the IRA. Hoffmann's counsel replied that the document request was made the previous day, and that he had brought some of the documents with him. The trial court took a break from the matter so that the attorneys could discuss the IRA and another issue. When the matter was called again, Hoffmann's counsel stated: "We have basically agreed to briefing schedules on both motions," with the last reply being due on August 26, 2014.

¶ 6    PNC filed a response to Hoffmann's exemption motion on August 19, 2014, arguing that she had not sustained her burden of proof for the exemption. PNC argued, among other things, that the potential for litigation began before 2010; Hoffmann had transferred more than $20 million in property in 2009; and the documents Hoffmann provided did not show when and in what amounts contributions and distributions were made to and from the IRA.

¶ 7    Hoffmann filed a reply on August 27, 2014, disputing PNC's assertions.

¶ 8        On September 4, 2014, the trial court held a hearing on Hoffmann's exemption motion. PNC's counsel stated that, unless and until he went through 40 years of tax records, he was "satisfied," from what he had seen, that the IRA was exempt. He stated that in her reply Hoffmann had "finally" attached the pension plan and some of the operational records. Hoffmann's attorney argued that damages were appropriate because an exempt asset had been seized.

¶ 9        The trial court granted Hoffmann's motion to declare the IRA exempt. However, it denied damages under section 12-1005 without prejudice, on the basis that Hoffmann did not specifically request such damages in her original motion; the trial court stated that Hoffmann could raise the issue in a new motion. The trial court then granted PNC's request to dismiss the citation against Raymond James.

¶ 10        On September 12, 2014, Hoffmann filed a motion for damages under section 12-1005. She argued that PNC had wrongly seized the IRA, denying her the benefit of the exempt asset for more than two months. Hoffmann maintained that under section 12-1005 she was entitled to double the value of the property seized.

¶ 11        In PNC's response, it argued that: Hoffmann had failed to produce documents supporting her exemption claim; there was no seizure under section 12-1005; and, even if a seizure had occurred, PNC could not be liable for damages, because its objection to the exemption was filed in good faith.

¶ 12        A hearing on the section 12-1005 motion took place on November 6, 2014. Hoffmann's counsel argued, *inter alia*, that, at the initial hearing on the exemption motion, although he had documents that he believed clearly showed that the IRA was exempt, PNC asked for a five-week briefing schedule, filed a response stating that Hoffmann had not met her burden, and then conceded the motion. PNC's counsel argued, in relevant part, that he asked for the briefing schedule partly so that he could review the documents that Hoffmann had brought. He stated that, because PNC had issued the citation to discover assets to Raymond James, it had received up to a thousand more pages of documents that would take some time to review. He further stated that Hoffmann had attached additional documents to her reply, which finally established a *prima facie* case for exemption. He stated that PNC decided that it did not want to review 40 years' of documents to find out whether the IRA was operationally compliant with the revenue code, so at the final hearing on the exemption motion he had stated that PNC was not going to further challenge Hoffmann's exemption claim.

¶ 13        The trial court denied Hoffmann's motion for damages. It stated that Hoffmann's position was that, once PNC was aware of *prima facie* evidence that the IRA was exempt but continued to pursue the citation, its actions constituted a seizure. The trial court stated that section 12-1005 seemed to require a party to file a civil action for damages, but since PNC did not raise an argument as to whether the motion was procedurally appropriate, the trial court would not consider it. The trial court continued that, in considering the statute's plain language:

    "I am finding that in this particular case there was no taking and there was no seizing even though there was an infringement on the right of Mrs. Hoffman [*sic*] to dispose of her property as she sees fit. And I do recognize there was. But that is our process and that was done legally."

The trial court stated that a party with a good-faith basis should have the right to investigate and respond to an exemption motion and that PNC's request was reasonable under the

circumstances. The trial court stated that it allowed about two months to explore the issue and that the rules were appropriately followed.

¶ 14 Hoffmann's counsel asked the trial court if it believed that its ruling was final and appealable. PNC's counsel stated that he did not believe it was, so Hoffmann's counsel asked for language under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). The trial court stated that, if Hoffmann's counsel believed that such language was necessary, he could file a motion within 30 days of the order. Hoffmann ultimately did not seek such language.

¶ 15 Hoffmann filed a notice of appeal on November 21, 2014.

¶ 16                                    II. ANALYSIS

¶ 17                                    A. Jurisdiction

¶ 18 PNC contends that we lack jurisdiction over this appeal, so we first address that issue. Hoffmann argues that we have jurisdiction under Illinois Supreme Court Rule 304(b)(4) (eff. Feb. 26, 2010), which allows the appeal of a "final judgment or order entered in a proceeding under section 2-1402 of the Code of Civil Procedure." Section 2-1402 governs supplementary proceedings in which a judgment creditor can seek to discover and recover assets of the judgment debtor to satisfy the judgment. 735 ILCS 5/2-1402 (West 2012); *Village of Lake in the Hills v. Niklaus*, 2014 IL App (2d) 130654, ¶ 19. Hoffmann sought damages under section 12-1005, which states:

> "If any officer by virtue of any judgment or process, or any other person by any right of distress takes or seizes any of the articles of property exempted from levy and sale, as provided in Part 10 of Article XII of this Act, such officer or person shall be liable in a civil action to the party damaged for double the value of the property so illegally taken or seized and costs of the action." 735 ILCS 5/12-1005 (West 2012).

¶ 19 PNC argues that the supplementary proceeding that gave rise to Hoffmann's section 12-1005 motion was the Raymond James citation proceeding. PNC maintains that the September 4, 2014, order granting Hoffmann's exemption motion and dismissing the Raymond James citation concluded that supplementary proceeding and had the effect of foreclosing PNC from collecting any of the judgment from Raymond James. PNC cites *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 110, where the court stated that, once underlying supplementary proceedings have automatically terminated, all other collateral proceedings must terminate as well, except as exempted by supreme court rule. The *Shipley* court held that, where the creditor allowed the supplementary proceedings to automatically terminate under Illinois Supreme Court Rule 277(f) (eff. July 1, 1982), the trial court lost authority under section 2-1402(f)(1) (735 ILCS 5/2-1402(f)(1) (West 2010)) to punish a party who violated a restraining provision of a citation. *Shipley*, 2014 IL App (4th) 130810, ¶¶ 112-14. PNC argues that in this case, once the September 4, 2014, order was entered, the trial court lost jurisdiction to hear any proceedings collateral to the citation proceeding, including the motion for damages.

¶ 20 PNC argues that any appeal relating to the Raymond James citation had to be brought within 30 days of the September 4, 2014, order. PNC notes that a motion is said to be directed against a judgment (see Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008) (includes phrase "directed against the judgment")) if it attacks the judgment, such as by requesting rehearing, retrial, modification, or vacation of the judgment. See *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 643

(2008). It argues that, therefore, after September 4, the only type of motion relating to the citation over which the trial court could have exercised jurisdiction would have been a postjudgment motion attacking the September 4 order. PNC contends that Hoffmann's damages motion did not attack the order and therefore did not toll the deadline for appealing any aspect of the citation proceeding, making Hoffmann's November 21, 2014, notice of appeal untimely.

¶ 21    Hoffmann counters that her motion for damages stemmed from her exemption motion, which in turn stemmed from PNC's citation to WSB. Hoffmann notes that PNC did not issue and serve the Raymond James citation until after she had filed the exemption motion. Hoffmann argues that, therefore, it is disingenuous for PNC to argue that the only supplementary proceeding that gave rise to the damages motion was a proceeding on a citation issued after her request to deem the IRA exempt. Hoffmann maintains that the damages issue arose in the context of the citations to both WSB and Raymond James and that the WSB citation is still ongoing.

¶ 22    Hoffmann argues that Rule 304(b)(4) does not state that the final judgment or order that is appealable must dispose of an entire supplementary proceeding. She cites *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1069 (2008), where this court stated that an order is final if it disposes of the parties' rights with respect to either the entire controversy or a definite and separate portion of the controversy. Hoffmann argues that the order she appealed from disposed of the parties' rights with respect to the IRA and whether PNC improperly seized that exempt asset.

¶ 23    Finally, Hoffmann argues that *Shipley* does not bar her appeal, because the court there stated that a time-bar argument was not a limitation on subject matter jurisdiction but rather an affirmative defense that was subject to forfeiture if not timely raised (see *Shipley*, 2014 IL App (4th) 130810, ¶¶ 82, 109), and here PNC never asserted in the trial court that her damages motion was time-barred.

¶ 24    As stated, Rule 304(b)(4) allows the appeal of a final judgment or order entered in a section 2-1402 proceeding in which a judgment creditor goes after a judgment debtor's assets. "Few cases discuss which orders in supplementary proceedings are final orders." *In re Estate of Yucis*, 392 Ill. App. 3d at 1069. Generally, a final order is one that disposes of the parties' rights with respect to either the entire controversy or some definite and separate portion of the controversy. *Id.* " 'An order in a section 2-1402 proceeding is said to be final when the citation petitioner is in a position to collect against the judgment debtor or a third party, or the citation petitioner has been ultimately foreclosed from doing so.' " *Inland Commercial Property Management, Inc. v. HOB I Holding Corp.*, 2015 IL App (1st) 141051, ¶ 26 (quoting *D'Agostino*, 382 Ill. App. 3d at 642); see also *Levaccare v. Levaccare*, 376 Ill. App. 3d 503, 511 (2007) (citation orders became final and appealable upon their entry). In *Inland*, the appellate court held that an order denying a substitution of judges was not a final judgment under Rule 304(b)(4), because it did not put the plaintiff in a position to collect the judgment amount or direct third parties to turn over funds, nor was there any substantive determination of any of the parties' rights as to the merits of any claim in the postjudgment action. *Id.* In contrast, in *D'Agostino*, the court held that an order was final and appealable under Rule 304(b)(4) where the plaintiffs were foreclosed from collecting funds from two third parties. *D'Agostino*, 382 Ill. App. 3d at 642.

¶ 25    While we agree with PNC that the September 4, 2014, order granting the exemption motion and dismissing the Raymond James citation was a final and appealable order because it

ultimately foreclosed PNC from collecting against Raymond James (see *Inland*, 2015 IL App (1st) 141051, ¶ 26), we also agree with Hoffmann that she was not attempting to attack that order when she filed her motion for damages, nor is she attempting to appeal from that order. We also find unpersuasive PNC's reliance on *Shipley* as authority prohibiting the damages motion, as there the defendants asserted the affirmative defense that the collateral proceedings terminated because the entire supplementary proceedings had automatically terminated under Rule 277(f) (*Shipley*, 2014 IL App (4th) 130810, ¶¶ 110-15). In this case, the supplementary proceedings were ongoing even after the damages motion had been ruled upon.

¶ 26 We note that section 12-1005 states that a party may be liable for damages in "a civil action," which arguably could be interpreted as requiring a separate action. However, as the trial court pointed out, PNC did not object to Hoffmann's bringing the motion in a section 2-1402 proceeding, so we do not consider whether Hoffmann's motion was procedurally appropriate.

¶ 27 We conclude that, under the circumstances present here, when the trial court entered the November 6, 2014, order, it was a final judgment on Hoffmann's section 12-1005 claim, as the order conclusively held that Hoffmann was not entitled to damages on her assertion that PNC had wrongfully seized the IRA. That is, the trial court's ruling was a final judgment that was "entered in a proceeding under section 2-1402 of the Code of Civil Procedure" (Ill. S. Ct. R. 304(b)(4) (eff. Feb. 26, 2010)), so the ruling was immediately appealable under Rule 304(b)(4), and Rule 304(a) language was not necessary. Therefore, we have jurisdiction over this appeal.

¶ 28 B. Section 12-1005 Motion for Damages

¶ 29 We now address Hoffmann's central argument on appeal, that the trial court erred in ruling that PNC had not unlawfully seized her IRA. As stated, section 12-1005 provides that, when a person "takes or seizes" exempt property, that person is liable to the damaged party for double the value of the property illegally taken or seized, as well as costs of the action. 735 ILCS 5/12-1005 (West 2012). The construction of a statute is a question of law, which we review *de novo*. *McVey v. M.L.K. Enterprises, L.L.C.*, 2015 IL 118143, ¶ 11. Similarly, we review *de novo* a trial court's ruling in supplementary proceedings where, as here, the trial court did not conduct an evidentiary hearing or make any factual findings. See *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007).

¶ 30 Hoffmann notes that no court has defined "seizure" under section 12-1005. She argues that, because property rights are fundamental rights, defining "seizure" under a fourth-amendment analysis is appropriate. She cites *People v. Raibley*, 338 Ill. App. 3d 692, 699 (2003), where the court stated that, in a fourth-amendment context, to "seize" property means to infringe, in a meaningful way, upon a person's possessory interest in the property. Hoffmann argues that the trial court's finding that PNC had infringed on her use of the IRA should have led to the conclusion that PNC had seized it. Hoffmann argues that, even if there is a good-faith exception under section 12-1005, it does not apply here, because at the initial hearing she gave PNC documents showing that the IRA was exempt. Hoffmann argues that PNC's bad faith is shown by: its refusal to release the IRA from the WSB and Raymond James citations to discover assets; its refusal of the trial court's offer to have the IRA deemed temporarily exempt, subject to discovery; taking five weeks to respond to the exemption motion; and then conceding at the hearing on the motion that the IRA was exempt. Hoffmann argues that, as a

result, she was deprived of her exempt funds for more than two months, which constituted a meaningful interference with the property. Hoffmann contends that PNC's actions demonstrate that its true motive was to deprive her of the use of the IRA for as long as possible and that it should be liable for abusing the legal process, through the damages mandated under section 12-1005, which would be double the value of the IRA.

¶ 31 PNC argues that Hoffmann did not comply with section 12-1005's procedural requirement of bringing a separate lawsuit and that this provides an independent basis to affirm the trial court's denial of the damages motion. As noted, however, PNC forfeited the alleged procedural defect by failing to raise it in the trial court. See *supra* ¶ 26; *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 842 (2010) (failure to timely object to a procedural deficiency results in forfeiture).

¶ 32 PNC next argues that it did not seize the IRA. PNC notes that almost all of the cases involving section 12-1005 are from the 1800s and early 1900s and that most involved the seizure and sale of a judgment debtor's property by a constable or sheriff. See, *e.g.*, *Heckle v. Grewe*, 125 Ill. 58 (1888); *Keenan v. Drew*, 144 Ill. App. 388 (1908). PNC maintains that in those cases the seizure was obvious because the property was physically taken and sold in satisfaction of the judgment. PNC notes that two comparatively recent cases that mentioned the statute, *In re Marriage of Schomburg*, 269 Ill. App. 3d 13 (1995), and *Jakubik v. Jakubik*, 208 Ill. App. 3d 119 (1991), involved nonwage garnishment proceedings where an order directed the turnover of funds. PNC argues that the circumstances in those cases are a far cry from the third-party citation here, where PNC never took possession of the IRA and did not request or receive a turnover order.

¶ 33 PNC argues that Hoffmann's analogy of the citation to a fourth-amendment seizure is strained, at best, and does not provide constructive guidance to this court. PNC argues that a far better analogue is *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307 (1989). There, one of the issues presented was whether a citation to discover assets under section 2-1402 was a wrongfully issued injunction that deprived the third party of procedural due process. *Id.* at 309. Our supreme court held that the restraining provision of section 2-1402 did not impose an injunction but, rather, merely informed the citee of penalties if it transferred or disposed of the judgment debtor's property. *Id.* at 315-16. The court also concluded that the third party was not deprived of due process, because it received a fair and timely hearing under the circumstances. *Id.* at 317. The court contrasted cases involving prejudgment-seizure statutes by stating that, in the case before it, "the stocks were not seized or impounded" but instead remained in the third-party's possession. *Id.* at 319. It further stated that the "citation did not constitute a seizure of the stock in question" (*id.*) and that "the restraining provision of section 2-1402 *** did not serve to seize the stock from" the third party's possession (*id.* at 321).

¶ 34 Hoffmann argues that *Bank of Aspen* is distinguishable because it did not concern section 12-1005's damages provision. She further argues that she has not claimed that due process was violated or that the restraining provision of section 2-1402 results in "seizures" under section 12-1005. She maintains that, where a judgment debtor asserts a proper exemption and the judgment creditor promptly releases the exempt property, there would be no meaningful infringement on the judgment debtor's interest in the property and no entitlement to damages. She argues that this situation is different because PNC persisted in keeping the IRA frozen without justification.

¶ 35    Hoffmann argues that *Bank of Aspen* is also distinguishable because, in the context of a due-process analysis, it focused on whether the citation deprived a party of physical possession of its asset. Hoffmann maintains that, because section 12-1005 provides damages for a "taking" or a "seizure," we must interpret the word "seizure" as different from a "taking," to conform to the rule that a statute should be interpreted such that no term is rendered meaningless or superfluous. See *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15.

¶ 36    Section 12-1005 applies only if a party "takes or seizes" exempt property. 735 ILCS 5/12-1005 (West 2012). In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, which is best indicated by the statute's plain language. *McVey*, 2015 IL 118143, ¶ 11. We give undefined terms their ordinary and popularly understood meaning. *Skaperdas*, 2015 IL 117021, ¶ 15. If the statutory language is clear, we must apply it as written, without resorting to extrinsic aids of statutory construction. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56.

¶ 37    Courts look to dictionaries to give words their ordinary and popularly understood meanings. See *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 29. This is appropriate here, as section 12-1005 is not directed at fourth amendment rights, in contrast to the cases on which Hoffmann relies. See *People v. Meyer*, 402 Ill. App. 3d 1089, 1092 (2010) (the fourth amendment protects people against unreasonable *government* searches and seizures). Webster's Dictionary defines "take" as, in relevant part, "to get into one's hands or into one's possession, power, or control by force or stratagem." Webster's Third New International Dictionary 2329 (1986). Black's Law Dictionary defines "take" as, in relevant part, "[t]o obtain possession or control, whether legally or illegally" and "[t]o seize with authority; to confiscate or apprehend." Black's Law Dictionary 1466 (7th ed. 1999). As pertinent here, Webster's Dictionary defines "seize" as "to take possession of." Webster's Third New International Dictionary 2057 (1986). Black's Law Dictionary similarly defines "seize" as, in relevant part, "[t]o forcibly take possession (of a person or property)." Black's Law Dictionary 1363 (7th ed. 1999).

¶ 38    Hoffmann asserts that a seizure took place here. However, under the plain meaning of that term as defined above, PNC cannot be said to have "seized" the IRA, because it did not take possession of the IRA. Although Hoffmann argues that we must apply a broader definition of a "seizure" because otherwise it would be equivalent to a "taking," the dictionary definitions above show that the plain meaning of "taking" extends to taking control of property, not just physical possession. In other words, we can apply the plain meaning of "seizure" without rendering that term superfluous in the context of the statute.

¶ 39    Even if, *arguendo*, the meaning of "seizure" is ambiguous, we agree with PNC that, under *Bank of Aspen*, the citation proceeding cannot be said to have resulted in a seizure; *Bank of Aspen* clearly held that a citation issued under section 2-1402's restraining provision did not result in the seizure of the targeted asset. *Bank of Aspen*, 126 Ill. 2d at 321. Rather, the citation simply informed the third party of potential penalties if it transferred or disposed of the judgment debtor's property. *Id.* at 315-16.

¶ 40    We recognize that Hoffmann asserts that it was not the citation itself that constituted the seizure but, rather, PNC's alleged failure to timely acknowledge the IRA's exempt status. Assuming that the plain meaning of "seizure" can have a reasonable-time component, Hoffmann's argument still fails. First, Hoffmann faults PNC for not accepting the trial court's

"offer" to have the IRA deemed temporarily exempt pending discovery, but it is clear from reviewing the report of proceedings that the trial court was trying to clarify PNC's position when it presented that scenario. See *supra* ¶ 6. Indeed, had the trial court believed that a temporary exemption was required under the circumstances, it would have ordered such a course of action without relying on PNC to accept its "offer." Regarding the documents demonstrating the exempt status, although Hoffmann claims that she provided all of the relevant documents at the initial exemption hearing, PNC claims that she provided additional material as attachments to her later-filed reply. The common-law record, which is limited in the first place,[1] does not resolve this issue. However, we agree with PNC that the record indicates that its decision not to further contest the IRA's exempt status was based at least partially on its desire not to spend additional time and resources obtaining and going through decades of tax-related documents. See *supra* ¶ 9. As for the timing of PNC's responses to the exemption motion, we note that Hoffmann's own counsel stated at the initial hearing, "We have basically agreed to briefing schedules on both motions," with the last reply being due on August 26, 2014. As Hoffmann agreed to this schedule and did not later seek to expedite the proceedings, she cannot now argue that PNC prolonged the proceedings, as any resulting error would qualify as invited error. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 33 (the rationale for the rule of invited error is that it would be manifestly unfair to grant a party relief based on an error that he or she introduced into the proceedings).

¶ 41    For these same reasons, even if, *arguendo*, the IRA could be considered as having been seized, the good-faith exception, articulated in *Jakubik*, 208 Ill. App. 3d at 126-27, would apply. In *Jakubik*, the court noted that the purpose of section 12-1005 was punitive, as was the purpose of section 2-611 (Ill. Rev. Stat. 1983, ch. 100, ¶ 2-611), which provided sanctions when attorneys failed to adequately investigate claims before bringing suit. *Jakubik*, 208 Ill. App. 3d at 126. The *Jakubik* court therefore reasoned that the good-faith or honest-mistake defense to a section 2-611 claim should extend to a claim for damages under section 12-1005. *Id.* at 127.

¶ 42    The debtor has the burden of showing that property is exempt from being applied to satisfy a judgment. *Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 13. Here, PNC had not seen any documents regarding the IRA when the first section 12-1005 hearing took place, and at that hearing Hoffmann's attorney agreed to a briefing schedule that was followed by the parties. According to PNC, it used that time to review Hoffmann's documents as well as documents obtained from Raymond James. Further, although PNC ultimately decided not to further challenge the IRA's exemption, it did so not on the basis that the documents tendered at the initial hearing conclusively proved its exempt status but, rather, on the basis that determining whether the IRA was exempt would require reviewing decades of tax-related documents, which it was unwilling to do. As such, even if the IRA was "seized" under section 12-1005, the good-faith exception would apply and Hoffmann

---

[1]The trial court granted Hoffmann's motion to limit the voluminous record on appeal to documents relevant to the issue on appeal. We note that Hoffmann, as the appellant, had the burden to provide a sufficiently complete record of the trial proceedings to support her claims of error, and we will resolve any doubts that arise from the incompleteness of the record against her. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

would not be entitled to damages.

¶ 43                                                III. CONCLUSION

¶ 44        In sum, we affirm the trial court's denial of Hoffmann's motion for damages under section 12-1005, as we conclude that Hoffmann's IRA was not "seized" under the statute. Even if it were, the good-faith exception to the statute would apply.

¶ 45        For the foregoing reasons, we affirm the judgment of the Du Page County circuit court.

¶ 46        Affirmed.